**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WIRELESS ALLIANCE, LLC, | |
| Plaintiff, | Case No. 2:23-cv-00095-RWS-RSP |
| v. | **LEAD CASE** |
| AT&T MOBILITY LLC, ET AL., | |
| Defendants. | |

**PLAINTIFF WIRELESS ALLIANCE, LLC'S MOTION FOR PARTIAL SUMMARY
JUDGMENT THAT THE ASSERTED PATENTS ARE NOT FRAND ENCUMBERED
AND DENYING DEFENDANTS' THIRTEENTH AFFIRMATIVE DEFENSE
(CONTRACTUAL LIMITATION ON DAMAGES – FRAND)**

███████████████████████████████████

## TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................................... 1

II.  QUESTIONS PRESENTED.................................................................................... 2

III. FACTUAL BACKGROUND ................................................................................. 2

   A. Defendants, Not Intervenors, Asserted A Thirteenth Defense Regarding FRAND ....... 2

   B. ERTI's IPR Policy Establishes When A Patent Becomes FRAND Encumbered .......... 3

   C. Defendants' Untimely Disclosure Of The Basis For Their Thirteenth Defense............. 4

   D. The '383 Patent Has Not Been Owned By An ETSI Member ...................................... 5

   E. Both Technical Experts Agree That The SCell Patents Are Not Essential To The 4G And 5G Standards ................................................................................................. 5

IV.  LEGAL STANDARDS ........................................................................................... 7

V.   THE UNREBUTTED EVIDENCE IN THE RECORD DEMONSTRATES THAT NO FRAND ENCUMBRANCES HAVE ATTACHED TO THE ASSERTED PATENTS ............... 8

   A. Wireless Alliance Is Entitled To Summary Adjudication That The '383 Patent Is Not FRAND Encumbered And This Aspect Of Defendants' Thirteenth Defense Should Be Denied ................................................................................................. 8

   B. The Undisputed Facts Establish That The SCell Patents Are Not Essential To The 4G And 5G Standards. Wireless Alliance Is Therefore Entitled To Summary Adjudication That The SCell Patents Are Not FRAND Encumbered And This Aspect Of Defendants' Thirteenth Defense Should Be Denied.................................... 9

   C. Defendants' Mischaracterizations Of Wireless Alliance's Previous Allegations Do Not Create A Genuine Dispute Regarding Essentiality Because They Are Wrong And Subjective Belief Is Irrelevant To The Essentiality Analysis .............................. 10

   D. Dr. Wicker's Untimely Rebuttal Opinions Do Not Create A Genuine Dispute Either............................................................................................................. 14

   E. Defendants Cannot Avoid Conditions Precedent To A FRAND Analysis By Assuming Them In A Hypothetical Negotiation ......................................................... 15

   F. Intervenors Have Not Pled Any FRAND-Related Defenses. But, To The Extent They Argue They Did, Intervenors' Defense Must Be Coextensive With Defendants' Thirteenth Defense And Summary Adjudication Is Appropriate For The Same Reasons ................................................................................................. 17

VI.  CONCLUSION........................................................................................................ 18

████████████████████

## TABLE OF AUTHORITIES

**Cases**

*3G Licensing, S.A. v. Blackberry Ltd.*,
   No. CV 17-82-LPS, 2020 WL 14008195 (D. Del. Oct. 2, 2020) ...................................... 10, 14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................................... 7

*EEOC v. Woodmen of the World Life Ins. Soc'y*,
   330 F.Supp.2d 1049 (D. Neb. 2004)..................................................................................... 16

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
   No. 2:16-CV-00052-JRG-RSP, 2017 WL 4341991 (E.D. Tex. Sept. 20, 2017)....................... 7

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
   956 F. Supp. 2d 925 (N.D. Ill. 2013) ................................................................................ 7, 9

*Jane Doe v. Harrison Cty., Tex.*,
   No. 2:19-CV-00254-RSP, 2021 WL 3128650 (E.D. Tex. July 23, 2021)................................. 7

*Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*,
   No. 2:21-CV-00113-JRG, 2023 WL 4157139 (E.D. Tex. Jun. 15, 2023)................................. 7

*Marvel Entm't Grp., Inc. v. Hawaiian Triathlon Corp.*,
   132 F.R.D. 143 (S.D.N.Y. 1990) ........................................................................................ 16

*Nat'l Ass'n of Regulatory Util. Comm'rs v. Interstate Commerce Comm'n*,
   41 F.3d 721 (D.C. Cir. 1994).............................................................................................. 16

*Netlist, Inc. v. Micron Tech., Inc.*,
   No. 2:22-CV-203-JRG-RSP, 2024 WL 396237 (E.D. Tex. Jan. 8, 2024).................. 7, 9, 13, 14

*Seminole Nation v. Norton*,
   206 F.R.D. 1 (D.D.C. 2001)............................................................................................... 16

*Stockton E. Water Dist. v. United States*,
   583 F.3d 1344 (Fed. Cir. 2009) ........................................................................................... 7

*Vinson v. Wash. Gas Light Co.*,
   321 U.S. 489 (1944).......................................................................................................... 16

**Rules**

FED. R. CIV. P. 56(a) ............................................................................................................ 7

FED. R. EVID. 408................................................................................................................ 12

███████████████████████████████████████████

Plaintiff Wireless Alliance, LLC moves for partial summary judgment that the Asserted Patents are not FRAND encumbered, and denial of AT&T's, T-Mobile's, and Verizon's (collectively, "Defendants") Thirteenth Defense of "Contractual Limitation on Damages – FRAND."

## I.    **INTRODUCTION**

The issue here is straightforward. Because this case is about 4G and 5G cellular technology, any FRAND obligation would derive from contractual obligations between ETSI and its members. Under ETSI's policy regarding intellectual property rights ("IPR"), a FRAND encumbrance *only* attaches if two preconditions are met: (1) a patent was or should have been declared to ETSI; and (2) the declared patent has been *objectively* found to be "essential" using the definition of "essential" provided in ETSI's IPR policy. Undisputed facts demonstrate that these conditions are not met for the Asserted Patents.

With respect to the '383 patent, it is undisputed that the '383 patent was never owned by a member of ETSI, and it therefore is not subject to ETSI's IPR policy.

With respect to the '106 and '662 patents (the "SCell patents"), both sides' experts agree that the patents are *not essential* to the 4G and 5G standards. For example, at deposition, Stephen Wicker agreed the SCell patents are not essential:

███████████████████████████████████████████
███████████████████████████
████████████

Ex. 1[1] at 200:21-24. Defendants came forward with no timely evidence that the SCell patents are essential, and Wireless Alliance has effectively unrebutted testimony that, objectively, the Scell

---

[1] Exhibits are attached to the Declaration of Benjamin T. Wang, filed concurrently herewith.

1

patents are not essential. Accordingly, the Court should find that the SCell patents are not essential and no FRAND encumbrance has attached.

Defendants will likely argue that these undisputed facts are irrelevant, and that essentiality can be assumed for the purposes of the damages hypothetical negotiation. But Defendants have come forward with no law establishing such a concept, and the argument is directly contrary to the essentiality requirement in both ETSI's IPR policy and precedent.

The Court should therefore grant summary adjudication that the Asserted Patents are not FRAND encumbered, and should summarily deny Defendants' Thirteenth Defense.

## II.  QUESTIONS PRESENTED

1.    Should Wireless Alliance be granted summary adjudication that the Asserted Patents are not FRAND encumbered?

2.    Should Wireless Alliance be granted summary adjudication denying Defendants' Thirteenth Defense regarding FRAND?

## III.  RELEVANT UNDISPUTED FACTS

### A.    Defendants, Not Intervenors, Asserted A Thirteenth Defense Regarding FRAND

Defendants' Thirteenth Defense is entitled "Contractual Limitation on Damages – FRAND." Dkt. 11 at 10, Dkt. 13 at 10, Dkt. 14 at 10. According to Defendants, this defense means that "Wireless Alliance's claims for monetary relief may be limited by its obligation to license the Asserted Patents on fair, reasonable, and non-discriminatory terms." *Id.* Defendants do not plead a breach of contract as a FRAND defense is typically raised.

Intervenors Nokia and Ericsson ("Intervenors") did not assert an affirmative defense regarding FRAND at all. Dkts. 46-52.

2

███████████████████████████████████

**B.     ERTI's IPR Policy Establishes When A Patent Becomes FRAND Encumbered**

Any obligation to license cellular intellectual property using FRAND (Fair, Reasonable, And Non-Discriminatory) terms and conditions is derived from a contractual obligation to a standards-setting organization. Here, the relevant standards-setting organization is ETSI, whose IPR policy is set forth at https://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf (attached as Ex. 2). Members of ETSI are subject to ETSI's IPR policy. *See, e.g.*, Ex. 3 at ¶ 83.

According to the IPR policy, an ETSI member is obligated to file a declaration (whose form is set out in the IPR policy) identifying intellectual property that "***may*** be or ***may*** become" essential to a standard promulgated by 3GPP and ETSI. *E.g.*, *id*. at ¶ 85 (emphasis added). The declaration will indicate whether the patent holder is or is not prepared to license its declared intellectual property using FRAND terms and conditions. *Id.* at 84-85. If a declarant is willing to license its intellectual property using FRAND terms and conditions, the FRAND obligation will attach when it is shown that the patent is in fact essential. Ex. 2 at § 6.1. If an undeclared patent of a member is found to be essential, the Director-General of ETSI may order the ETSI-member owner to agree to a FRAND encumbrance. *Id.* In contrast, a third party owner of a patent found to be essential has no FRAND or other ETSI obligations whatsoever. *See id.* at § 8.1.2.

ETSI specifically defines what it means by "essential" as follows:

6     **"ESSENTIAL"** as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

*Id.* at 49. Intellectual property is "essential" where, from a technical perspective only, a device cannot "comply with a STANDARD without infringing that IPR." *Id.* Other considerations, such

3

████████████████████████████████████████████████

as financial considerations, market realities, and competitive needs are not relevant to whether intellectual property is "essential" in ETSI's IPR policy.

### C.    Defendants' Untimely Disclosure Of The Basis For Their Thirteenth Defense

After initially refusing to explain the basis for their defense at all, on March 22, 2024, Defendants served virtually identical responses explaining that, in relevant part, the basis for their Thirteenth Defense was the declaration of a parent application of the SCell patents to ETSI, and their (faulty) understanding that "███████████████████████████████████ ████████" Ex. 4 at 32-33; Ex. 5 at 31-32; Ex. 6 at 31-32.

At deposition, Defendants could not provide any further information about the basis for their defense. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

On June 3, 2024, the final day of discovery and after their witnesses had disclaimed any knowledge about the basis for their defense, Defendants greatly expanded their theory to specifically discuss ████████████████████████████████████. ████ ████████ Ex. 4 at 33-37; Ex. 5 at 32-37; Ex. 6 at 32-37. ████████████████████

████████████████████████████████████████████████

---

[2] Intellectual Discovery is Wireless Alliance's predecessor-in-interest for the Asserted Patents. Wireless Alliance was assigned the '383 patent from Intellectual Discovery, and Wireless Alliance exclusively licensed the '106 and '662 patents from Intellectual Discovery. Dkt. 1 at ¶ 1.



████████████████████████████████████ Ex. 4 at 34-35; Ex. 5 at 33-34; Ex. 6 at 33-34.

### D.      The '383 Patent Has Never Been Owned By An ETSI Member

The '383 patent was assigned by the inventors to Intellectual Discovery, and then to Wireless Alliance. *E.g.*, Ex. 10. Neither Intellectual Discovery nor Wireless Alliance is a member of ETSI nor has either entity ever agreed to the ETSI IPR policy (including its potential FRAND encumbrances). *See* Ex. 11 (not listing Intellectual Discovery or Wireless Alliance).

### E.      Both Technical Experts Agree That The SCell Patents Are Not Essential To The 4G And 5G Standards

Defendants' technical expert, Wicker, did not opine in his opening report regarding essentiality of the Asserted Patents. At deposition, he confirmed that he did not believe the SCell patents were essential:



Ex. 1 at 200:21-24; *see also id.* at 43:4-13 (████████████████████████ ████████████████), 106:9-109:4 (████████████████ ████████████████████████████ ████████████████████████), Ex. 12 at ¶¶ 173 (████ ████████████████████ ████████████); Ex. 13 at ¶ 130 (████████████████)

---

[3] In this context, user equipment refers to any device that connects to a carrier's cellular network, such as a phone or tablet.

5



██████████████████████████████████████████); Ex. 14 at ¶ 280 ██████████████████████████████████████████).[4] Paul Carpenter, offered by Defendants to provide opinions regarding FRAND-related issues, also offered no such opinions. Ex. 15 at 38:17-21 (███████████████████████████████ ██████████). Carpenter did, however, opine that it is not uncommon for a standard to be mandatory for user equipment but not for cellular infrastructure (Ex. 16 at ¶ 67), which is consistent with Wicker's opinions.

Todor Cooklev, Wireless Alliance's technical expert, similarly opined that the SCell patents are not essential to the 4G and 5G standards. Ex. 17 at ¶ 525 (noting that the relevant standards do not, for most part, address cellular infrastructure at all).

In pre-filing discussions,[5] Intervenor Ericsson similarly argued that both the SCell patents and the '383 patent were not essential. █████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████

---

[4] Defendants may argue that this admission is not accurate because Wicker later testified that, under Wireless Alliance's infringement theory, the patents are essential. As addressed in the co-pending motion to strike, Wicker's essentiality opinions are untimely and this opinion is made without analysis or evidence. Moreover, Wicker's conclusory opinion is contradicted by his other opinions demonstrating how the SCell patents are not essential.

[5] ███████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
███████████████

██████████████████████████████████████████████████

None of Defendants' opening expert reports addressed essentiality. In rebuttal, Defendants served a report from Wicker. Despite being of the opinion that the SCell patents are not essential and arguing about various aspects of the standard that do not apply to the functionality of Defendants' cellular networks, Wicker nonetheless purports to "rebut" Cooklev's non-essentiality opinion by arguing that ██████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████ Ex. 12 at ¶¶ 185-191.

## IV.    LEGAL STANDARDS

"Summary judgment must be granted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00052-JRG-RSP, 2017 WL 4341991, at *2 (E.D. Tex. Sept. 20, 2017)  (citing FED. R. CIV. P. 56(a)). Under this standard, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Jane Doe v. Harrison Cty., Tex.*, No. 2:19-CV-00254-RSP, 2021 WL 3128650, at *1 (E.D. Tex. July 23, 2021) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

As the parties asserting the defense, it is Defendants' burden to demonstrate that the Asserted Patents are FRAND encumbered, including that they are essential as defined by ETSI. *E.g.*, *Netlist, Inc. v. Micron Tech., Inc.*, No. 2:22-CV-203-JRG-RSP, 2024 WL 396237, at *2 (E.D. Tex. Jan. 8, 2024) (granting summary judgment because "Micron [the party asserting a FRAND defense] has not met its burden" regarding essentiality; reference in contentions and expert report was insufficient); *Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*, No. 2:21-CV-00113-JRG, 2023 WL 4157139, at *5 (E.D. Tex. Jun. 15, 2023) ("the ultimate burden to prove the

7

FRAND defense rested with Ericsson," the defendant asserting the defense); *In re Innovatio IP Ventures, LLC Pat. Litig.*, 956 F. Supp. 2d 925, 936 (N.D. Ill. 2013) (comparing a FRAND defense to a license defense, and citing *Stockton E. Water Dist. v. United States*, 583 F.3d 1344, 1360 (Fed. Cir. 2009) for the holding that elements of an affirmative defense must be proven by the asserting party, including essentiality).

## V.    THE UNREBUTTED EVIDENCE IN THE RECORD DEMONSTRATES THAT NO FRAND OBLIGATIONS HAVE ATTACHED TO THE ASSERTED PATENTS

Wireless Alliance is entitled to summary adjudication that the Asserted Patents are not FRAND encumbered and denial of Defendants' Thirteenth Defense. The undisputed evidence shows that (1) the '383 patent has never been owned by an ETSI member and therefore cannot be subject to ETSI's contractual IPR policy; and (2) the SCell patents are not essential.[6] Defendants' likely argument that they need not prove essentiality for its FRAND defense to apply should be rejected as contrary to both ESTI's IPR policies and precedent.

### A.    Wireless Alliance Is Entitled To Summary Adjudication That The '383 Patent Is Not FRAND Encumbered And This Aspect Of Defendants' Thirteenth Defense Should Be Denied

It is undisputed that the '383 patent was assigned by the inventors to Intellectual Discovery, and then to Wireless Alliance. *E.g.*, Ex. 10; Ex. 1 at 45:7-46:6. It is also undisputed that neither Intellectual Discovery nor Wireless Alliance is a member of ETSI or has ever agreed to the contractual ETSI IPR policy (including its potential FRAND encumbrances). *See* Ex. 11 (not listing Intellectual Discovery or Wireless Alliance). Because agreement to the ETSI IPR policy is

---

[6] Defendants' Thirteenth Defense is presented as a "contractual limitation on damages," which is an ambiguous defense. Regardless of whether Defendants intended to advance a breach of FRAND-related contract defense or some other defense is immaterial for the purposes of this Motion. Wireless Alliance reserves the right to further address this issue in other filings if necessary.

a necessary condition precedent for the FRAND encumbrance to attach (*see* Ex. 2 at §§ 6.1, 8.1.2), Wireless Alliance is entitled to summary adjudication that the '383 patent is not so encumbered.

**B.      The Undisputed Facts Establish That The SCell Patents Are Not Essential To The 4G And 5G Standards. Wireless Alliance Is Therefore Entitled To Summary Adjudication That The SCell Patents Are Not FRAND Encumbered And This Aspect Of Defendants' Thirteenth Defense Should Be Denied**

If a patent is declared to ETSI, as Defendants argue the SCell patents were, a FRAND encumbrance may attach ***only if*** Defendants can show that the SCell patents are ***in fact*** essential to the 4G or 5G standards. Under ETSI's IPR policy, a patent is essential if, from a technical perspective, the standard cannot be practiced without infringing the patent. Ex. 2 at pg. 49. This is Defendants' burden to prove. *See, e.g.*, *Netlist*, 2024 WL 396237, at *2; *In re Innovatio*, 956 F. Supp. 2d at 936.

It is undisputed that the SCell patents are not essential to the 4G and 5G standards. Defendants' technical expert, Wicker, agreed to this fact at deposition:

Ex. 1 at 200:21-24. He repeatedly demonstrated in his reports why the SCell patents are not essential because █████████████████████████████████████████ ████████████████████████████████. *E.g.*, Ex. 12 at ¶ 173; Ex. 13 at ¶ 130; Ex. 14 at ¶ 280. Intervenor Ericsson made similar arguments to Wireless Alliance prior to the complaints being filed against Defendants. Ex. 18 at 355-368, 389-399, 421-427; Ex. 19 at 645-46, 649-50, 652-53. And Wireless Alliance agrees that the SCell patents are not essential, a position affirmed by its own expert, Cooklev. Ex. 17 at ¶ 525 (opining that the SCell patents are not essential because the SCell patents are directed to cellular infrastructure behavior not addressed in the 4G and 5G standards).

In light of the undisputed fact that the SCell patents are not objectively essential, the Court should grant Wireless Alliance summary adjudication that the SCell patents are not essential, and should deny Defendants' Thirteenth Defense with respect to the SCell patents.

### C.     Defendants' Mischaracterizations Of Wireless Alliance's Previous Allegations Do Not Create A Genuine Dispute Regarding Essentiality Because They Are Wrong And Subjective Belief Is Irrelevant To The Essentiality Analysis

Defendants may argue that there is a material dispute regarding essentiality based on Wireless Alliance's purported subjective belief that the Asserted Patents are essential and subject to FRAND encumbrances. But even if Wireless Alliance had held such a belief (unsupported by the evidence as demonstrated below), it would be irrelevant. ETSI's IPR policy defines a patent as essential from an objective perspective. Ex. 2 at pg. 49. A patent does not become essential under ETSI's definition unless it is in fact shown to be essential. *3G Licensing, S.A. v. Blackberry Ltd.*, No. CV 17-82-LPS, 2020 WL 14008195 (D. Del. Oct. 2, 2020) is instructive. There, like here, the defendants pointed only "to evidence that Plaintiffs have believed their patents are standard-essential" *Id.* at *3. In other words, the defendant argued that patent owner's subjective belief should operate as a dispositive admission. Judge Stark rejected the argument because "essentiality depends on objective findings, i.e., whether practicing the relevant standard ***in fact*** infringes the asserted patents and whether non-infringing alternative ***in fact*** exist. Pointing to Plaintiffs' beliefs on these points (even accepting Defendants have done so) is insufficient to meet Defendants' burden." *Id.* (emphasis in original). Here, not only is Defendants' argument relying on Wireless Alliance's purported subjective belief insufficient in and of itself to meet its burden like in *3G Licensing*, but there is unrebutted evidence demonstrating the objective lack of essentiality of the Asserted Patents: the '383 patent is not subject to ESTI's IPR policy, and the SCell patents are agreed by both technical experts and Intervenor Ericsson to not be essential.

10

████████████████████████████████████

Defendants' argument about Wireless Alliance's purported subjective belief about essentiality is also untrue. Defendants may point to three types of evidence. Defendants may first point to Wireless Alliance's Rule 408 correspondence prior to the complaints being filed. However, these negotiation documents do not specifically represent that the actual Asserted Patents are essential or FRAND encumbered. *E.g.*, Ex. 20 (exemplary letter[7] to AT&T ██████

██████████████████████████████████████

██████████████ ); *see also* Ex. 21 at WA004185 (exemplary letter[8] to AT&T ████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████████ ), 329 (tab 4 contains a ██████████████████

███████████████ mentioning nothing about standards essentiality). Indeed, Defendants themselves testified at deposition that ██████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████ . Even

---

[7] Similar letters were sent to T-Mobile and Verizon, among others.
[8] Similar letters were sent to T-Mobile and Verizon, among others.

11

███████████████████████████████████████████████

Defendants themselves have admitted that ███████████████████████████

█████████████████████████████████████████████████.

There were also no such representations during negotiations with Intervenors. For example, in discussions with Intervenor Ericsson, Wireless Alliance ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████

Moreover, the negotiations with Defendants and Intervenors were made under FED. R. EVID. 408, and Defendants' use of the licensing offers as proof of a claim of essentiality is prohibited by Rule 408. FED. R. EVID. 408 (a settlement may not be used "to prove or disprove the validity or amount of a disputed claim"; essentiality is necessary for Defendants' FRAND-related defense).

Wireless Alliance's infringement contentions similarly fail to show that Wireless Alliance ever contended the Asserted Claims of the Asserted Patents are essential. The Asserted Claims all address details of cellular network functionality for which details are not publicly available. Wireless Alliance's pre- and post-complaint claim charts therefore drew reasonable inferences from the evidence that was available, which included the standards directed primarily at user equipment behavior. For example, with respect to the claim element 1[b], Wireless Alliance disclosed evidence of user equipment changing a secondary carrier to a deactivation state after a predetermined time (Ex. 21 at WA004333) under the assumption that the carrier's network

12

███████████████████████████████████████

hardware, such as base stations, likely utilized a similar functionality. *See* Ex. 25 at 266 (███████

██████████████████████████████████████████████

████████ .

Finally, Defendants may point to Cooklev's infringement report. But Cooklev expressly opined that the Asserted Patents are not essential. Ex. 17 at ¶¶ 520-527. And his infringement opinions are not contrary to his opinion that the Asserted Claims are not essential. Cooklev's infringement opinions are based on evidence about how Defendants' cellular networks actually operate, not the fact that their infrastructure hardware complies with the 4G and 5G standards. For example, with respect to claim limitation 1[b] of the '106 patent, Cooklev did not cite to the standards at all. Ex. 17 at ¶¶ 150-159, 273-280.[9]

Arguments about subjective belief or purported admissions were rejected by Judge Stark in *3G Licensing*. This Court has similarly rejected the argument that essentiality can be established by evidence of a patent owner's subjective infringement assertions. In *Netlist*, the defendant argued that essentiality could be established because the plaintiff's infringement contentions "clearly hinge" on standards, either expressly or implicitly. *Netlist*, 2024 WL 396237, at *2. The Court rejected this argument because nothing in the contentions "expressly demonstrate[d]" that the standards were essential, and "other evidence" was needed to create a genuine issue regarding essentiality. *Id.* The facts here are even more contrary to a finding of essentiality. Not only is there no evidence of an express allegation of essentiality, but it is undisputed that the '383 patent is not

---

[9] In discovery, Defendants also referred to Intellectual Discovery's agreement with Avanci as evidence of essentiality. To the extent Defendants' rely on this agreement here, it is irrelevant for a number of reasons. For example, Avanci runs a patent pool directed at licensing a specific type of user equipment (automobiles). *See, e.g.*, https://www.avanci.com/vehicle/ ("With Avanci Vehicle, **automakers** can opt to take a single license on standard terms" (emphasis added)). Any agreement or encumbrance from Avanci is irrelevant to whether the Asserted Claims, which are directed at carrier cellular network functionality, are essential.

13

███████████████████████████████████████

subject to ESTI's IPR policies, and both technical experts agree that the SCell patents are not essential.

Defendants' potential reliance on Rule 408 discussions, infringement contentions, and Cooklev's infringement report therefore does not create a genuine dispute of material fact regarding essentiality or Defendants' Thirteenth Defense. *See 3G Licensing*, 2020 WL 14008195 at *3; *Netlist*, 2024 WL 396237, at *2.

### D.    Wicker's Untimely Rebuttal Opinions Do Not Create A Genuine Dispute Either

Defendants may also argue that, despite the admissions of Wicker and Intervenor Ericsson, there is a genuine dispute regarding essentiality by citing to Wicker's "rebuttal" opinions. Ex. 12 at ¶¶ 185-191. Wicker's opinions in rebuttal are untimely and should be struck, as addressed under separate cover. But, even if they are considered, they do not create a genuine dispute of material fact. Essentiality requires affirmative proof that a patent claim is ***in fact*** essential. *E.g., 3G Licensing*, 2020 WL 14008195, at *3. This is an objective, not subjective, analysis. *Id.* Objectively, there is no evidence that ETSI's policies apply to the '383 patent, and Wicker offered no opinion in his opening report regarding essentiality, and expressly agreed at deposition that the SCell patents are not essential. *See* Ex. 1 at 200:21-24. The subjective evidence cited by Wicker (Ex. 12 at ¶¶ 185-190) is irrelevant and mischaracterized as discussed above. Wicker's final paragraph about ██████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ lacks any analysis, and should be disregarded. Wicker's untimely rebuttal opinions, even if considered, are insufficient to create a genuine dispute.

14

████████████████████████████████████████

**E.    Defendants Cannot Avoid Conditions Precedent To A FRAND Analysis By Assuming Them In A Hypothetical Negotiation**

Defendants may argue that, because they have not brought a breach of FRAND-related contract defense, they need not prove essentiality or that ETSI's IPR policies apply to the Asserted Claims. Defendants may instead argue that the hypothetical negotiation should assume that FRAND terms and conditions would apply, regardless of the conditions precedent in ETSI's IPR policy. Wireless Alliance is aware of no contractual obligations or precedent applying FRAND terms and conditions to patents that do not meet ETSI's conditions precedent. Nor is such an argument factually supportable here. As described above, Wireless Alliance has never conceded that the Asserted Claims of the Asserted Patents are FRAND encumbered. Wireless Alliance has merely offered a licensing framework that would apply to any standard essential patents in its portfolio. In its first letter to Defendants, ████████████████████████████ ████████████████████████████████████████████ *E.g.*, Ex. 21 at WA004185-187. Wireless Alliance made no mention of FRAND or represented that any of its patents were "standard essential." By way of follow-up, ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████. The Asserted Patents were not identified as standard essential or subject to Wireless Alliance's proposed FRAND licensing scheme. Moreover, even if Defendants were correct and Wireless Alliance made a Rule 408 offer to license the Asserted Patents using FRAND terms and conditions (Wireless Alliance did not), this hypothetical situation would still have no bearing on the salient question underlying

Defendants' Thirteenth Affirmative Defense: whether the Asserted Claims are subject to ESTI's IPR and are objectively essential under ETSI's IPR policy. Defendants cannot avoid their burden of proving satisfaction of ETSI's conditions precedent in its IPR policy by arguing that the hypothetical negotiation would have assumed the application of FRAND terms and conditions.

Defendants' argument combining the hypothetical negotiation and contract-based FRAND terms and conditions has additional flaws. A hypothetical negotiation is a hypothetical financial negotiation between willing parties concentrated solely on financial terms (royalty base and the reasonable royalty rate). Determination of FRAND terms **and conditions** is a wholistic analysis concerned with entirety of a patent owner's FRAND licensing policy, including but not limited to non-financial terms of a FRAND license (such as cross-licenses, patent assignments, etc.) and the circumstances of the patent owner at the time a FRAND license is agreed to. *E.g.*, *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. CV 15-2370 JVS(DFMX), 2018 WL 4488286, at \*29-52 (C.D. Cal. Sept. 14, 2018); *In the Matter of Certain Wireless Devices With 3G Capabilities And Components Thereof*, ITC Inv. No. 337-TA-800, Initial Determination at 432 (June 28, 2013) (attached as Ex. 26); *Unwired Planet International Ltd, v. Huawei Technologies Co.*, 2020 UKSC 37 (Aug. 26, 2020) (attached as Ex. 27). FRAND negotiations are typically done on a portfolio-wide basis, as opposed to only the Asserted Patents like in a hypothetical negotiation, and they typically have a worldwide geographic scope, as opposed to being United States-only as in a hypothetical negotiation. In summary, while there is some overlap in some of the financial-related analysis (such as license comparability), the hypothetical negotiation and FRAND analyses are substantially different in scope and applicable law. It does not make sense to combine them as Defendants may propose here, and even if such a combination were legally

16

cognizable, it would not free Defendants of their burden to prove the ETSI IPR policy-required conditions precedent before any such analysis is applicable.

> **F.**    **Intervenors Have Not Pled Any FRAND-Related Defenses. But, To The Extent They Argue They Did, Intervenors' Defense Must Be Coextensive With Defendants' Thirteenth Defense And Summary Adjudication Is Appropriate For The Same Reasons**

Intervenors have not asserted any claims or defenses related to FRAND, or a breach of a FRAND-related contract. Dkts. 46-52. Intervenors, however, purport to have retained experts and served reports on FRAND-related issues, and Intervenor Ericsson's motion to disqualify Jon Putnam assumes that Ericsson has FRAND-related arguments here.

To the extent Intervenors argue that they have FRAND-related claims or defenses here, Wireless Alliance is entitled to summary adjudication for the same reasons as explained above. As Intervenors, "one of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944); *see also Nat'l Ass'n of Regulatory Util. Comm'rs v. Interstate Commerce Comm'n*, 41 F.3d 721, 729 (D.C. Cir. 1994) ("Intervenors may only argue issues that have been raised by the principal parties; they simply lack standing to expand the scope of the case to matters not addressed by the petitioners in their request for review."); *EEOC v. Woodmen of the World Life Ins. Soc'y*, 330 F.Supp.2d 1049, 1055 (D. Neb. 2004) (holding that an intervenor could not assert a cross-claim that would "improperly expand the scope of the proceedings before this court"); *Seminole Nation v. Norton*, 206 F.R.D. 1, 7 (D.D.C. 2001) (denying a potential intervenor's request to intervene and present claims that fell outside of the scope of the litigation); *Marvel Entm't Grp., Inc. v. Hawaiian Triathlon Corp.*, 132 F.R.D. 143, 146 (S.D.N.Y. 1990) (stating that an intervenor may not assert additional claims that "needlessly expand the scope and

17

costs of th[e] litigation and ... thus prejudice the rights of" the other parties to expeditiously resolve the action). To the extent Intervenors have any such claims or defenses, they must be co-extensive with Defendants' Thirteenth Defense, and should be denied for the same reasons.

## VI.    CONCLUSION

The Court should grant Wireless Alliance summary adjudication that the Asserted Patents are not FRAND encumbered, and should deny Defendants' Thirteenth Defense. The '383 patent is not subject to ETSI's IPR policy, and it is undisputed that the SCell patents are not essential.

Dated: August 9, 2024

Respectfully submitted,

/s/ Benjamin T. Wang
Benjamin T. Wang

Benjamin T. Wang
CA State Bar No. 228712
Email: bwang@raklaw.com
Andrew D. Weiss
CA State Bar No. 232974
Email: aweiss@raklaw.com
Qi Tong
CA State Bar No. 300347
Email: ptong@raklaw.com
Jacob R. Buczko
CA State Bar No. 269408
Email: jbuczko@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Greg Love
Texas State Bar No. 24013060
Email: greg@swclaw.com
STECKLER WAYNE LOVE

18

107 East Main Street
Henderson, Texas 75652
(903) 212-4444 (telephone)

Attorneys for Plaintiff
*Wireless Alliance, LLC*

19

████████████████████████████

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Plaintiff hereby files its Certificate of Authorization to File its Motion for Partial Summary Judgment Under Seal per Local Rule CV-5(a)(7)(A)-(B). The undersigned counsel for Plaintiff hereby certifies that the Court has already granted authorization to seal the document as set forth in the Protective Order.

*/s/ Benjamin T. Wang*
Benjamin T. Wang

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document is being served on all counsel of record via email on August 9, 2024.

*/s/ Benjamin T. Wang*
Benjamin T. Wang

20