**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WIRELESS ALLIANCE, LLC, <br><br>     Plaintiff, <br><br> v. <br><br> AT&T MOBILITY LLC, AT&T SERVICES, INC., AND AT&T CORP., <br><br>     Defendants, | CASE NO. 2:23-cv-00095 <br><br>     (Lead Case) <br><br> JURY TRIAL DEMANDED |
| WIRELESS ALLIANCE, LLC, <br><br>     Plaintiff, <br><br> v. <br><br> T-MOBILE US, INC., AND T-MOBILE USA, INC., <br><br>     Defendants, | CASE NO. 2:23-cv-00096 <br><br>     (Member Case) <br><br> JURY TRIAL DEMANDED |
| WIRELESS ALLIANCE, LLC, <br><br>     Plaintiff, <br><br> v. <br><br> VERIZON COMMUNICATIONS, INC., AND CELLCO PARTNERSHIP D/BA VERIZON WIRELESS, <br><br>     Defendants. | CASE NO. 2:23-cv-00097 (Member Case) <br><br> JURY TRIAL DEMANDED |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY
JUDGMENT ON DEFENDANTS' FRAND DEFENSES**

█████████████████████████████████

# TABLE OF CONTENTS

I.    RESPONSE TO DISPUTED FACTS ................................................................... 1

    A.    Response to "Defendants, Not Intervenors, Asserted a Thirteenth Defense Regarding FRAND".................................................................................. 1

    B.    Response to "ETRI's IPR Policy Establishes When A Patent Becomes FRAND Encumbered"................................................................................. 1

    C.    Response to "Defendants' Untimely Disclosure Of The Basis For Their Thirteenth Defense"........................................................................................ 3

        1.    Wireless Alliance withheld the Samsung-ID License. ......................................... 4

        2.    Defendants' fact witnesses could not have viewed the AEO Samsung-ID License 7

        3.    Defendants provided an opening report on FRAND. ............................................ 7

    D.    Response to "The 383 Patent has never been owned by an ETSI Member" .......... 8

    E.    Response to "Both Technical Experts Agree that the SCell Patents are not essential to the 4G and 5G standards" ..................................................................... 8

II.    THE UNREBUTTED EVIDENCE DEMONSTRATES THAT DEFENDANTS FRAND DEFENSE IS PROPER ....................................................................................... 9

    A.    There is a genuine dispute whether '383 Patent is essential and whether it offered the '383 Patent on FRAND terms. ...................................................................... 9

    B.    Damages for the '383 Patent are limited if it is essential. .................................... 10

    C.    The '106 & '662 Patents were declared essential and are FRAND encumbered. 11

    D.    Wireless Alliances and its predecessors previous allegations and actions create a genuine dispute. ................................................................................................ 12

    E.    Dr. Wicker's timely rebuttal opinions create a genuine dispute.......................... 13

    F.    Defendants are permitted to introduce FRAND-related evidence as part of the hypothetical negotiation............................................................................... 14

III.    CONCLUSION.................................................................................................... 15

i

████████████████████████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*3G Licensing, S.A. v. BlackBerry Ltd. & BlackBerry Corp.*,
   No. CV 17-82-LPS, 2020 U.S. Dist. LEXIS 273896 (D. Del. Oct. 2, 2020) ........11, 12, 14, 15

*CSIRO v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015)................................................................................3, 10, 11

*G+ Commc'ns, LLC v. Samsung Elecs. Co.*,
   2:22-cv-78, Dkt. No. 575 (Memorandum Opinion), (E.D. Tex. Jan 22, 2024) .......................11

*G+ Commc'ns, LLC v. Samsung Elecs. Co. Ltd.*,
   No. 2:22-CV-78-JRG, 2024 U.S. Dist. LEXIS 3566 (E.D. Tex. 2024).....................................1

*G+ Commc'ns, LLC v. Samsung Elecs. Co.*,
   No. 2:22-CV-00078-JRG, 2024 U.S. Dist. LEXIS 67260 (E.D. Tex. Apr. 12, 2024) ......10, 13

*Netlist, Inc. v. Micron Tech., Inc.*,
   No. 2:22-CV-203-JRG-RSP, 2024 U.S. Dist. LEXIS 18839 (E.D. Tex. Jan. 8, 2024)...........13

*Optis Wireless Tech. v. Apple Inc.*,
   No. 2:19-CV-00066-JRG, 2021 U.S. Dist. LEXIS 110317 (E.D. Tex. 2021)...........................3

**RULES**

Rule 7.1 ........................................................................................................................................5

Rule 408 ......................................................................................................................................13

███████████████████

**TABLE OF EXHIBTS**

| Exhibit | Description |
|---|---|
| A | Excerpts from Plaintiff's Responses to Common Interrogatories (2024-05-20) |
| B | Letter from Russ August Kabat to Ericsson (2022-04-22) |
| C | ETRI's IPR Decl. to ETSI (JD-WA_0012452) |
| D | Letter from Russ August Kabat to Verizon (2021-03-31) |
| E | Letter from Russ August Kabat to T-Mobile (2023-08-02) |
| F | Excerpts from Dr. Wicker's Rebuttal Main Report (2024-07-15) |
| G | Excerpts from Plaintiff's Response to Interrogatories (2024-05-14) |
| H | Excerpts from Defendants and Intervenors Responses to Plaintiff's First Set of Interrogatories (2023-09-05) |
| I | Excerpts from Defendants and Intervenors Responses to Plaintiff's First Set of Interrogatories (2024-06-03) |
| J | Excerpts from the Deposition of Bruce Bernstein, Wireless Alliance 30(b)(6) Representative |
| K | Excerpts from Plaintiff's Response to Interrogatories (2023-09-28) |
| L | Letter from Deane to Wang (2024-02-05) |
| M | Letter from Link to Deane (2024-02-26) |
| N | Email from Welch to Link (2024-02-27) |
| O | Email from Welch to Counsel (2024-02-29) |
| P | Email from Welch to Link (2024-03-15) |
| Q | Email from Link to Welch (2024-03-19) |
| R | Email from Welch to Counsel (2024-03-25) |
| S | Email from Welch to Link (2024-04-08) |
| T | Email from Welch to Link (2024-04-10) |
| U | Email from Welch to Link (2024-04-10) |
| V | Unredacted Samsung-ID License in Korean (WA007420) |

███████████████████████████████████

| Exhibit | Description |
|---------|-------------|
| W | Letter from Deane to Weiss (2024-06-17) |
| X | Excerpts from the Opening Report of Mr. Carpenter |
| Y | Excerpts from the Rebuttal Report of Mr. Putnam |
| Z | Letter from Russ August Kabat to AT&T (2023-02-28) (WA_AT&T_000046549) |
| AA | Letter from Russ August Kabat to Verizon (2023-02-28) (WA_VZW_0005999) |

███████████████████████████████████████

The Court should deny Wireless Alliance's partial summary judgment motion for three reasons: *First*, there is evidence in the record creating a fact issue as to essentiality. Specifically, the prior owner of the patents, ETRI, made an essentiality declaration (which is required to be made in good faith) for two of the three patents-in-suit. ████████████████████████████

████████████████████████████████████████████

*Second,* Defendants are permitted to argue in the alternative that if the claims of the patents-in-suit are infringed, they are essential. Defendants' expert's technical reports make this point in the alternative. This evidence precludes a grant of summary judgment.

*Third*, although Wireless Alliance argues that there is no FRAND commitment for the lone patent where a declaration was not filed, the Federal Circuit has held that, if the patent is essential, damages still must be awarded consistent with FRAND.

Finally, Wireless Alliance violated the local rules on page limits for non-dispositive motions, which is another reason to deny it.

## I.    RESPONSE TO DISPUTED FACTS

### A.    Response to "Defendants, Not Intervenors, Asserted a Thirteenth Defense Regarding FRAND"

Defendants dispute that "Defendants do not plead a breach of contract as a FRAND defense is typically raised." Dkt. No. 111 (Mot.) at 2. The FRAND commitment sounds in contract, so pleading a violation of FRAND inherently pleads a breach of contract. *G+ Commc'ns, LLC v. Samsung Elecs. Co. Ltd.*, No. 2:22-CV-78-JRG, 2024 U.S. Dist. LEXIS 3566, at *7-8 (E.D. Tex. 2024) ("[T]he Court finds that the FRAND commitment sounds in contract . . . ."). FRAND is also a limitation on damages for essential patents.

### B.    Response to "ETRI's IPR Policy Establishes When A Patent Becomes FRAND Encumbered"

Defendants dispute Wireless Alliance's legal conclusions in this section. In addition, there

██████████████████████████████████████████████████

is a fact issue as to whether the patents-in-suit are standard essential:

- Wireless Alliance's predecessor declared the '106 and '662 Patents essential, which must be done in good faith. Ex. C (ETRI IPR Decl.) (declaring Application No. WO2011KR08404, which is the PCT application that led to the '106 and '662 Patents); Dkt. No. 111-3 (ETSI IPR Policy) at §4.1.

- Wireless Alliance stated that "ETRI, the original assignee of the '106 and '662 patents, disclosed the Korean parent of the '106 and '662 patents as an ***'essential IPR'*** . . . ." Ex. A (2024-05-20 Pls. Resp. to Common Interrog.) at 10. [1]

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████

- Dr. Wicker (Defendants' expert) concludes the patents are essential under Wireless Alliance's infringement read. Ex. F (Wicker Reb. Main Rept.) ¶¶191-92.

- Wireless Alliance stated that its "operative infringement contentions demonstrate how

---

[1] For each citation to the Complaint and Interrogatory Responses herein, Defendants note that there are identical or nearly identical statements made in the other consolidated complaints and cases.

*practicing the 4G and 5G standards infringes the Asserted Patents.*" Ex. A (5/20/24 Pls. Resp. to Common Interrog. No. 16) at 12.

- Wireless Alliance states in its Complaints that "Wireless Alliance offered to license the '383 patent *using the same FRAND-based offer.*" Dkt. No. 1 (AT&T Compl.) ¶17.

- Wireless Alliance states in its Complaint that ETRI filed an "IPR Information Statement and Licensing Declaration *declaring the ETRI Patents essential to the 4G standard, including the functionality accused in this Complaint.*" Dkt. No. 1 (AT&T Compl.) ¶14.

These facts are more than enough to create a genuine issue of material fact about whether the patents are essential.

Defendants also dispute the assertion that "a third party owner of a patent found to be essential has no FRAND or other ETSI obligations whatsoever." Dkt. No. 111 (Mot.) at 3. A patent owner, such as Wireless Alliance, can agree to license a patent on FRAND terms even if that patent was never declared to a standards body, as Wireless Alliance has done here and admitted in its Complaint. Dkt. No. 1 (AT&T Compl.) at ¶17. Moreover, the Federal Circuit has held that "reasonable royalties for SEPs generally—and not only those subject to a RAND commitment— must not include any value flowing to the patent from the standard's adoption." *CSIRO v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015).

### C. Response to "Defendants' Untimely Disclosure Of The Basis For Their Thirteenth Defense"

Defendants asserted their FRAND defense in their first responsive pleading. Because FRAND was asserted as a limitation on damages, it did not have to be pled as an affirmative defense. *Optis Wireless Tech. v. Apple Inc.*, No. 2:19-CV-00066-JRG, 2021 U.S. Dist. LEXIS 110317, at *15 (E.D. Tex. 2021) (granting a new trial where FRAND-evidence was excluded despite Apple's failure to plead a FRAND defense). Thus, Wireless Alliance's complaint is that

3

████████████████████████████████████████

(i) Defendants did not disclose timely interrogatory responses and (ii) deponents for Defendants were unable to articulate the basis for the FRAND assertions.

However, first, any alleged delay in responding to interrogatory responses is attributable to Wireless Alliance, who withheld ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ Defendants diligently disclosed the entire basis for its defense *during the fact discovery period*. Defendants then provided an opening report on FRAND from Mr. Paul Carpenter and Wireless Alliance provided a rebuttal report from Mr. Putnam. Second, Wireless Alliance's complaints about depositions have no merit because, at the time of depositions, Wireless Alliance had only made generic disclosures of its damages theories and no disclosure of the amount claimed. Ex. G (2024-05-14 Pl. Resp. to Interrog. No. 13) at 45-47. The timeline for these events is set forth below.

### 1.    Wireless Alliance withheld ████████████████

Wireless Alliance served Individual Interrogatory No. 7 requesting the basis for Defendants' FRAND Defense. Early in discovery, Defendants responded to that Interrogatory identifying (i) the Complaint, (ii) the document declaring the '106 & '662 patents to ETSI, and (iii) other documents "*presumed to be in the possession and control of Wireless Alliance.*" *E.g.*, Ex. H (2023-09-05 Resp. to Pl. First Set of Interrog.) at 17-19.[2]

Importantly, one documents in the control of Wireless Alliance ████████████████

████████████████████████████████████████

████████████████████████████████████████ Notably,

---

[2] AT&T, Verizon, and T-Mobile all served nearly identical responses with the same language.

███████████████████████████████████████████████████████

████████████████████████████████████████ Ex. J (Bernstein Dep.) at 195:21-22, 197:6-17; Dkt. No. 3 (Rule 7.1 Disclosure).

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ On February 05, 2024, Defendants pointed out that statement "is at best a facially incomplete response." Ex. L (2024-02-05 Ltr. from Deane to Wang) at 6.

On February 26, 2024, Wireless Alliance committed to "supplement its responses" to the interrogatories on licenses ██████████████████████████████████████████████████. Ex. M (2024-02-26 Ltr from Link to Deane) at 2.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████▐█████████████████████████████████████

███ ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

- ████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

███ ████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

---

[3] Defendants also pursued the Samsung license through Samsung itself and the Hauge.



- ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

Defendants then waited for that production, and kept asking Wireless Alliance to make it.

- On March 25, 2024, Defendants asked, "Do you all have an estimate on the date by which you will make these productions?" Ex. R (2024-03-25 Email from Welch to Counsel).

- On April 4, 2024 and again on April 8, 2024, Defendants again followed up requesting to confer. Ex. S (2024-04-08 Email from Welch to Link).

- On April 10, 2024, Defendants again followed up and raised concerns about the close of fact discovery. Ex. T (2024-04-10 Email from Welch to Link).

- ████████████████████████████████████████████████████ ████████████████████████████████████



In the time that Defendants were waiting on the production from Wireless Alliance, Defendants put Wireless Alliance on formal notice it would rely on ████████████████ for its FRAND defense. ████████████████████████████ ████████████████████████████████████████████████████ ██████ ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████

Then, on April 17, 2024, Wireless Alliance produced ██████████████████ ████████████████████████████████████████████████████

6



Despite Wireless Alliance's delay, all of this information was disclosed within the fact discovery period.

### 2.    Defendants' fact witnesses could not have viewed the ▬▬▬▬▬ ▬▬▬▬▬

Wireless Alliance alleges that because of the June 3, 2024 supplement, "[a]t depositions, Defendants could not provide any further information about the basis for their defense." Dkt. No. 111 (Mot.) at 4. But Defendants' fact witnesses did not have any additional information about the information provided in the June 3, 2024 supplement. ▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬ are marked "Attorney's Eyes Only" and thus were unavailable to any of Defendants' 30(b)(6) witnesses. As a result, none of Defendants' fact witnesses had non-privileged, responsive information regarding Defendants' FRAND defense, which Defendants told Wireless Alliance in a letter dated June 17, 2024. Ex. W (2024-06-17 Ltr. from Deane to Weiss) at 1.

### 3.    Defendants provided an opening report on FRAND.

On June 17, 2024 (in accordance with the DCO), Mr. Carpenter provided an opening report setting forth Defendants' FRAND defense. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

7

On July 15, 2024, Wireless Alliance served a rebuttal report by Mr. Putnam. Ex. Y (Putnam Reb. Rept.). Specifically, Mr. Putnam was "asked to respond to Mr. Carpenter's opinions regarding: the role of FRAND," which he spent seventy-seven pages doing. *Id.* at ¶5.

Therefore, there was nothing untimely about the events that unfolded. ████████ ████████████████████████████ Defendants disclosed what it could in interrogatory responses until it received the license, and then all of the Parties' experts opined on the FRAND issue.

**D.      Response to "The 383 Patent has never been owned by an ETSI Member"**

While the '383 Patent may not have been owned by an ETSI member, Wireless Alliance offered to license the '383 Patent on FRAND terms. Indeed, in all three Complaints, Wireless Alliance told this Court and the public it was offering the '383 Patent on FRAND terms: "Wireless Alliance offered to license the '383 patent using the same FRAND-based offer." Dkt. No. 1 (AT&T Compl.) ¶17; Case No. 2:23-cv-96 (E.D. Tex.), Dkt. No. 1 (TMO Compl.) ¶16, ; Case No. 2:23-cv-97 (E.D. Tex.), Dkt. No. 1 (VZW Compl.) ¶17. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ Therefore, Defendants can assert a FRAND defense to that alleged FRAND offer. *See supra* Section I.B.

**E.      Response to "Both Technical Experts Agree that the SCell Patents are not essential to the 4G and 5G standards"**

While Defendants' expert, Dr. Wicker, has opined that the patents-in-suit are not infringed (and therefore not essential), in the alternative, Dr. Wicker has opined that the patents are essential under Wireless Alliance's overly broad infringement read. Responding to Dr. Cooklev's opinions in his rebuttal report, Dr. Wicker states: ████████████████████

████████████████████████████████

█████████████████████████████████████████ then the '662 and '106 Patents *are essential*." Ex. F (Wicker Reb. Main Rept.) ¶191. Likewise, for the '383 Patent, Dr. Wicker states "Dr. Cooklev's infringement read would *read on any implementation of dual connectivity*." *Id.* ¶192. Defendants dispute Wireless Alliance's allegations that these opinions were not timely disclosed. *See* Defs. Resp. to Motion to Strike Wicker at 3-4. Wireless Alliance quotes Dr. Wicker stating that under the proper scope of the claims, the patents are not necessarily essential. Dkt. No. 111 (Mot.) at 5. But as shown above, Dr. Wicker's opinions about essentiality are more nuanced than Wireless Alliance alleges. Due to Dr. Cooklev's broad infringement read, Dr. Wicker states that the patents would be essential if they are found to be infringed under that read.

But moreover, Wireless Alliance admits the technology was declared essential. For example, in the Complaint, Wireless Alliance alleges Defendants were "aware of ETRI's IPR Information Statement and Licensing Declaration *declaring the ETRI Patents essential to the 4G standard, including the functionality accused in this Complaint*." Dkt. No. 1 (AT&T Compl.) at ¶14. *See also* Section I.B.

## II.    THE UNREBUTTED EVIDENCE DEMONSTRATES THAT DEFENDANTS FRAND DEFENSE IS PROPER

Wireless Alliance is not entitled to summary judgment. The patents are FRAND encumbered based on Wireless Alliance's declaration of the '106 and '662 patents to the ETSI standards body and Wireless Alliance's actions with respect to both patents.

### A.    There is a genuine dispute whether '383 Patent is essential and whether it offered the '383 Patent on FRAND terms.

For the '383 Patent, Wireless Alliance's previous statements and offers on allegedly FRAND terms show that it "fully embraced" FRAND policies and raises a genuine dispute for trial. First, as explained above, Wireless Alliance previously told this Court that it made an allegedly FRAND offer for the '383 Patent. *See, e.g.*, § II.D *infra* ("Wireless Alliance offered to

9

license the '383 Patent using the same FRAND-based offer." Dkt. No. 1 (AT&T Compl.) ¶17. Likewise, Wireless Alliance stated the '383 Patent was essential. *See* Section I.B. These admissions alone give rise to Defendants' FRAND defense. Wireless Alliance cannot tell the jury and public it offered FRAND rates and then prevent Defendants from showing that the rate offered was not FRAND. Permitting Wireless Alliance to do so is tantamount to using FRAND as both a sword and a shield and is improper.

Second, the law supports Defendants' interpretation. In *G+*, the Court found that "G+ fully embraced the essentiality of the Asserted Patents . . . including the FRAND encumbrance associated with these patents" and found the patent were FRAND encumbered. *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00078-JRG, 2024 U.S. Dist. LEXIS 67260, at *15 (E.D. Tex. Apr. 12, 2024). That is what happened here, as shown by the pre-suit correspondence and the filing of the Complaint. *See* Section I.B. It is a genuine question of fact as to whether Wireless Alliance acted in such a way that "fully embraces" the FRAND principle.

### B. Damages for the '383 Patent are limited if it is essential.

Moreover, under *CSIRO v. Cisco Systems*, the '383 Patent did not need to be declared essential to be subject to a limitation on damages. 809 F.3d 1295 (Fed. Cir. 2015). If the '383 Patent is a SEP (of which there is a genuine dispute), then the adjustments under the *Georgia Pacific* factors apply as equally "to RAND-encumbered patents and SEPs." *Id.* at 1304. This is because "reasonable royalties for SEPs generally—and not only those subject to a RAND commitment—must not include any value flowing to the patent from the standard's adoption." *Id*.

In *CSIRO*, the patentee did not declare the patent as essential. *Id.* Nevertheless, the patent was found to be a SEP. *Id.* The Federal Circuit then reversed the district court because the district court failed to account for the "special apportionment issues that arise" with SEPs. *Id.*

The same is true here. The Court should permit Defendants to proffer all evidence of its

10

defense to account for the special appointment issues outlined in *CSIRO*, which is precisely what Defendants' FRAND based evidence seeks to do. *3G Licensing, S.A. v. BlackBerry Ltd. & BlackBerry Corp.*, No. CV 17-82-LPS, 2020 U.S. Dist. LEXIS 273896, at *10 (D. Del. Oct. 2, 2020)) (finding the patents not essential but ruling this "does not, however, prohibit Defendants from introducing FRAND-related evidence to establish the proper damages award.").

Therefore, the Court should deny summary judgment for the '383 Patent.

**C.      The '106 & '662 Patents were declared essential and are FRAND encumbered.**

For the '106 and '662 Patents, there is a fact issue as to whether they are essential and FRAND encumbered. Defendants have come forward with evidence showing, in the alternative, that all the patents-in-suit are essential. *See supra* Section I.B. This raises a genuine issue of fact.

This Court has established a low bar for proof of essentiality: "[w]here a patent is contributed to an adopted standard established by a standard setting organization, *such contribution contractually burdens the patent to thereafter be licensed on fair, reasonable, and non-discriminatory terms*." *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, 2:22-cv-78, Dkt. No. 575 (Memorandum Opinion) at 11, (E.D. Tex. Jan 22, 2024). "This obligation is irrevocable, and thereafter runs with the patent." *Id.* Wireless Alliance's predecessor declared the '106 and '662 Patents, so they are FRAND encumbered. In *G+*, the Plaintiff argued its patent was not FRAND encumbered because it was not essential. *G+Comm'ns*, U.S. Dist. LEXIS 67260, at *9 (E.D. Tex. Apr. 12, 2024) ("[F]irst, G+ argues that ETSI FRAND obligations only apply to essential patents."). The Court expressly rejected this position. Since the patents had been declared essential and since the FRAND encumbrance attached, the jury was instructed to "determine a FRAND royalty in the case, *whether or not you find the Patents-in-Suit are standard essential . . . ." Id.* at *10. Wireless Alliance's two part "objective" test in its Motion is not the standard set forth in *G+*.

11

████████████████████████████████████████

### D.    Wireless Alliances and its predecessors previous allegations and actions create a genuine dispute.

Wireless Alliance is trying to backtrack on its prior actions and allegations. This is the exact kind of practice that this Court's reasoning in *G+* prevents. The Court's analysis—backed by French law and expert opinion on French law—ensures that Wireless Alliance cannot allege patents are SEPs and FRAND encumbered when it is beneficial, only to disavow essentiality and FRAND when it is inconvenient. *See G+Comm'ns*, Dkt. No. 625 at 9 ("To allow G+ to reverse course and, for the very first time, now argue that it is entitled to seek non-FRAND damages would be wholly inappropriate and improper.").

Wireless Alliance first alleges that its own belief that the patents are essential is "irrelevant" because "ETSI's IPR policy defines a patent as essential from an objective perspective" and cites to a Delaware case as "instructive." Dkt. No. 111 (Mot.) at 10.  The case that Wireless Alliance cites, however, does not analyze the impact of a declared ETSI patent or the impact of an allegedly FRAND offer. The *G+* case out of this Court is, instead, directly on point: when a patentee declares its patents to ETSI as essential and then tells the Court in the Complaint that it made allegedly FRAND offers, FRAND is a proper defense. *G+Comm'ns*, Dkt. No. 575 (Memorandum Opinion) at 11. Moreover, the Delaware court even acknowledged that its ruling "does not, however, prohibit Defendants from introducing FRAND-related evidence to establish the proper damages award." *3G Licensing, S.A. v. BlackBerry Ltd. & BlackBerry Corp.*, No. CV 17-82-LPS, 2020 U.S. Dist. LEXIS 273896, at *10 (D. Del. Oct. 2, 2020)).

Wireless Alliance next argues that the Court should disregard Wireless Alliance's own actions and statements. It begins by arguing that the Court should disregard the licensing offers that Wireless Alliance itself ████████████████████ Dkt. No. 111 (Mot.) at 11, citing Ex. 20. In that offer, Wireless Alliance stated ████████████████████

12

███████████████████████████████████████████████

███████████████████████████████████████████████████████  That offer included all three patents in this litigation. Dkt. No. 1 (AT&T Compl.) at ¶17. The fact that Wireless Alliance represented to the Defendants and the Court that its patents were essential and FRAND encumbered creates a genuine dispute of fact as to whether they are essential.

Wireless Alliance next attempts to sweep its prior statements under the rug using Rule 408. Dkt. No. 1111 (Mot.) at 12. Wireless Alliance's argument was rejected in *G+*. In *G+*, the Court expressly allowed use of licensing offers over G+'s Rule 408 objection. The Court said those offers could be used "to show the practice in the industry in FRAND license negotiations, including the specific practices of the parties." *G+ Commc'ns*, 2024 U.S. Dist. LEXIS 67260, at *8. That is what Defendants would be doing here.

Wireless Alliance also asks the Court to ignore is its infringement contentions, in which Wireless Alliance relied nearly exclusively on the standards. Although Wireless Alliance claims it had no choice but to use publicly available standards, it never updated those contentions after receiving discovery.

Finally, Wireless Alliance cites *Netlist, Inc. v. Micron Tech., Inc.*, No. 2:22-CV-203-JRG-RSP, 2024 U.S. Dist. LEXIS 18839 (E.D. Tex. Jan. 8, 2024). Dkt. No. 111 (Mot.) at 13-14. But the facts here are different. In *Netlist* a completely different standard (JEDEC) and standards body were at issue, and the patents in that case do not appear to have been declared as essential to that standard. *Id. Netlist* is thus inapplicable to the facts of this case.

**E.      Dr. Wicker's timely rebuttal opinions create a genuine dispute.**

Dr. Wicker's opinions create a genuine disputed fact and were timely. Dr. Wicker's opinions in his rebuttal report were timely for the reasons set forth in Defendants' Response to Wireless Alliance's Motion to Strike Dr. Wicker's expert report, being filed concurrently herewith. Importantly, (i) Wireless Alliance cites no case excluding opinions about essentially from a

rebuttal report, (ii) Dr. Wicker was directly responding to and rebutting Dr. Cooklev's opinions that the patents are not essential, and (iii) Wireless Alliance effectively asks the Court to prevent all Defendants from responding to essentiality opinions. This is not the law, and Wireless Alliance cites no authority for its theory that the opinions were untimely. Because Dr. Wicker's opinions were timely, the opinions in his report create a genuine dispute of fact that precludes granting the Motion.

### F. Defendants are permitted to introduce FRAND-related evidence as part of the hypothetical negotiation.

Wireless Alliance sets forth "conditions precedent" for establishing a FRAND commitment under ETSI's policy that Wireless Alliance gleans from *3G Licensing, S.A. v. BlackBerry Ltd. & BlackBerry Corp.*, No. CV 17-82-LPS, 2020 U.S. Dist. LEXIS 273896, at *10 (D. Del. Oct. 2, 2020). Specifically, Wireless Alliance argues that FRAND encumbrance only attaches if two preconditions are met: (1) a patent was or should have been declared to ETSI; and (2) the declared patent has been objectively found to be "essential" using the definition of "essential" provided in ETSI's IPR policy. Dkt. No. 111 (Mot.) at 1. As explained above, however, these "conditions" were not expressed by the Court in the *G+ Communications* litigation.

Regardless, even if it were the law, and even if Defendants could not show a genuine dispute about whether the patents are essential, Wireless Alliance still ignores the holding of the Delaware case that it cites. Specifically, Wireless Alliance states that "Defendants may instead argue that the hypothetical negotiation should assume that FRAND terms and conditions would apply." Dkt. No. 111 (Mot.) at 15. Wireless Alliance then makes a lengthy series of arguments attempting to distinguish FRAND from the hypothetical negotiation. *Id.* at 16-17.

To the extent Wireless Alliance is attempting to argue that FRAND-based evidence would play no role in the hypothetical negotiation or that damages for SEPs are not limited by FRAND

14

principles, this argument ignores the law. For example, Wireless Alliance's argument ignores the Delaware Court's holding that even if a patent is found to be not essential, that "does not, however, prohibit Defendants from introducing FRAND-related evidence to establish the proper damages award." *3G Licensing*, 2020 U.S. Dist. LEXIS 273896, at *10. Under any scenario (e.g., whether the patent is found to be an SEP or not), Courts permit the same types of FRAND evidence that Defendants would seek to introduce here.

However, as explained in detail above, the Court should never reach this question because Wireless Alliance's argument hinges on the absence of a disputed fact about essentiality. And again here, Wireless Alliance tries to re-write history about the facts that give rise to the genuine dispute. Most importantly, here, Wireless Alliance again tries to backtrack and presents inconsistent positions to the Court. It is impossible to reconcile Wireless Alliance's statement in its Motion that (i) "[t]he Asserted Patents were not identified as standard essential *or subject to Wireless Alliance's proposed FRAND licensing scheme*" with its statement in the Complaint that (ii) "*Wireless Alliance offered to license the '383 patent using the same FRAND-based offer.*" Dkt. No. 111 (Mot.) at 15; Dkt. No. 1 (AT&T Compl.) at ¶17. One of those two statements is not true.

In sum, even if the Delaware law applied, and even if the Court looked past all of Wireless Alliance's own inconsistent statements and found no genuine factual dispute exists, Defendants *still* should be permitted to present FRAND based evidence under the framework of the hypothetical negotiation.

## III.    CONCLUSION

For the reasons stated above, summary judgment should be denied.

Dated: August 23, 2024                                Respectfully submitted,

                                                                        */s/ David S. Frist*
                                                                        David S. Frist (GA Bar No. 205611)

15

████████████████████████████

John D. Haynes (GA Bar No. 340599)
Emily C. Welch (GA Bar No. 606071)
Michael C. Deane (GA Bar No. 497195)
Sloane S. Kyrazis (GA Bar No. 878240)
ALSTON & BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Phone: (404) 881-7000
Fax:    (404) 881-7777
Email:  david.frist@alston.com
john.haynes@alston.com
emily.welch@alston.com
michael.deane@alston.com
sloane.kyrazis@alston.com

Ross R. Barton (NC Bar No. 37179)
ALSTON & BIRD LLP
1120 South Tryon Street
Suite 300
Charlotte, NC 28203-6818
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
Email: ross.barton@alston.com

Theodore Stevenson, III (TX Bar No. 19196650)
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas TX 75201
Phone: (214) 922-3400
Fax:    (214) 922-3899
Email: ted.stevenson@alston.com

Deron R. Dacus
THE DACUS FIRM
821 E SE Loop 323 Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Facsimile: (903) 581-2543
Email: ddacus@dacusfirm.com

*Attorneys for Defendants AT&T Services, Inc., AT&T Mobility LLC, and AT&T Corp.; Defendant T-Mobile USA, Inc.' Defendant Cellco Partnership d/b/a*

16



*Verizon; Intervenor Ericsson Inc.; and Intervenor Nokia of America Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on August 23, 2024 on all counsel who have consented to electronic service.

*/s/ David S. Frist*
David S. Frist

17