**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**MARSHALL DIVISION**

| | |
|---|---|
| WIRELESS ALLIANCE, LLC, | |
| Plaintiff, | Case No. 2:23-cv-00095-RWS-RSP |
| v. | **LEAD CASE** |
| AT&T MOBILITY LLC, ET AL., | |
| Defendants. | |

### PLAINTIFF WIRELESS ALLIANCE, LLC'S MOTIONS *IN LIMINE*

███████████████████████████████████

**TABLE OF CONTENTS**

I.    MIL #1: NO IMPROPER EXPERT OPINONS .................................................................... 1

II.   MIL #2: EXCLUDE CARPENTER AND BISHOP FROM PROVIDING FACTUAL TESTIMONY OUTSIDE OF THEIR EXPERTISE ............................................................... 1

III.  MIL #3: NO REFERENCE TO "DISCRIMINATION" AND "FAVORABLE TREATMENT" OF KOREAN ENTITIES ............................................................................ 3

IV.   MIL #4: NO EVIDENCE OF NON-COMPARABLE LICENSES ...................................... 5

V.    MIL #5: EXCLUDE REFERENCES TO POST-ISSUANCE PATENT OFFICE PROCEEDINGS .............................................................................................................. 7

VI.   MIL #6: EXCLUDE REFERENCE TO PRIVILEGED COMMUNICATIONS AND INTERVENORS' ACTIONS TO REBUT WILLFULNESS ALLEGATIONS ...................... 8

VII.  MIL #7: EXCLUDE ARGUMENTS ABOUT FRAND BREACH OF CONTRACT OR ANY VIOLATION OF A FRAND ENCUMBRANCE .......................................................... 11

VIII. MIL #8: JUDGE GILSTRAP'S OTHER COURT MILS SHOULD BE ADOPTED .......... 12

█████████████████

## TABLE OF AUTHORITIES

**Cases**

*Adasa Inc. v. Avery Dennison Corp.*,
55 F.4th 900 (Fed. Cir. 2022) ........................................................................................... 5

*CSIRO v. Cisco Systems, Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) ................................................................................... 11, 12

*ESS Tech., Inc. v. PC-Tel, Inc.*,
No. C-01-1300 VRW, 2001 WL 1891713 (N.D. Cal. Nov. 28, 2001) ..................................... 5

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) ........................................................................................... 6

*Finjan, Inc. v. Sophos, Inc.*,
No. 14-CV-01197-WHO, 2016 WL 4560071 (N.D. Cal. Aug. 22, 2016) ............................... 8

*Fox v. Taylor Diving & Salvage Co.*,
694 F.2d 1349 (5th Cir. 1982) ........................................................................................... 3

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
No. 11 C 9308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) ..................................................... 12

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
No. CV 18-452-WCB, 2022 WL 2800911 (D. Del. June 27, 2022) ......................................... 8

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................... 6, 7

*Microsoft Corp. v. Motorola, Inc.*,
795 F.3d 1024 (9th Cir. 2015) ........................................................................................... 12

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ........................................................................................... 6

*Sells v. Thaler*,
No. CIV. SA-08-CA-465-OG, 2012 WL 2562666 (W.D. Tex. June 28, 2012) ........................ 3

*United States v. Mejia*,
545 F.3d 179 (2nd Cir. 2008) ........................................................................................... 3

*Unwired Planet International Ltd, v. Huawei Technologies Co.*,
2020 UKSC 37 (Aug. 26, 2020) ........................................................................................... 4

*Vaporstream, Inc. v. Snap Inc.*,
No. 217CV00220MLHKSX, 2020 WL 978731 (C.D. Cal. Feb. 28, 2020) ............................... 7

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
609 F.3d 1308 (Fed. Cir. 2010) ........................................................................................... 6

**Rules**

FED. R. EVID. 403 ............................................................................................................... 3, 7, 13

Fed. R. Evid. 703 ............................................................................................................... 3

## I.    MIL #1: NO IMPROPER EXPERT OPINONS

Wireless Alliance requests that the Court prevent Defendants from offering improper expert opinions at trial, such as "rebuttal" opinions about topics for which Defendants bear the burden of proof, which were not in opening reports.[1] Some of these opinions, such as untimely opinions about essentiality and non-infringing alternatives, have been addressed in separate briefing. *E.g.*, Dkt. 111 at 7; Dkt. 112 at 12. Defendants' damages experts also provide improper or untimely opinions in support of their FRAND affirmative defense. *E.g.*, Dkt. 114-3 at ¶¶ 171-179 (opining on a set FRAND royalty rate in rebuttal though such analysis should have been in an opening report); Dkt. 116-2 at ¶¶ 9, 34, 40, 48, 68, 89-91, 95, 104, 112 (asserting Defendants' FRAND defense in rebuttal). These untimely opinions should be excluded in their entirety as being in violation of the Court's DCO setting forth the time when opinions about topics for which a party bears the burden were supposed to be served. But, if they are not excluded in their entirety, they should be excluded unless Wireless Alliance opens the door by offering the affirmative testimony that must be rebutted. For example, Wicker may only offer his "rebuttal" testimony about essentiality if Cooklev offers his affirmative testimony about essentiality.

## II.    MIL #2: EXCLUDE CARPENTER AND BISHOP FROM PROVIDING FACTUAL TESTIMONY OUTSIDE OF THEIR EXPERTISE

The Court should exclude certain testimony of Defendants' experts Carpenter and Bishop. Carpenter's opening report includes extensive recitation of evidence purportedly describing Intellectual Discovery, including its founding, history, business model, and patent portfolio. Dkt. 114-2 at ¶¶ 93-110. Carpenter has no first-hand knowledge of Intellectual Discovery, and instead is simply reciting and summarizing various hearsay articles and publications provided to him by

---

[1] This MIL assumes that Wireless Alliance's co-pending motions are not granted. For example, if Wireless Alliance's motion for summary judgment of no FRAND encumbrance is granted, any opinions related to that defense would no longer be relevant.

1

counsel. Defendants have chosen to present their evidence about Intellectual Discovery in this manner because they have no other avenue to present the evidence. Defendants did not take discovery from Intellectual Discovery directly. Bishop's testimony similarly simply regurgitates hearsay information taken from the internet, as addressed in the pending Bishop *Daubert* motion. Defendants should not be permitted to use an expert to present evidence they did not properly gather through discovery.

Defendants will likely argue that the facts about Intellectual Discovery are factual background for Carpenter's opinions about "discrimination." But, as Defendants themselves argued, Carpenter "████████████████████████████████" and is only opining that ████████████████████████████████████████ ████████" Dkt. 134 at 9. Carpenter's factual testimony about Intellectual Discovery is irrelevant to this opinion as Defendants characterize it. Moreover, Carpenter's opening report does not support the relevance of his Intellectual Discovery-related factual recitation. Other than this extensive "background," Carpenter only refers to Intellectual Discovery to argue ████ ████████████████████████████████████████████ ████████████████████ Neither "fact" is relevant to the FRAND analysis, as described in MIL #3. And Defendants appear to agree that these are not relevant opinions as Defendants appear to have disclaimed them in their *Daubert* response. Dkt. 134 at 9. Carpenter has no first-hand knowledge about Intellectual Discovery and simply relies on hearsay statements from publications Defendants' counsel gathered from the internet.

Bishop's opinions are addressed in detail in the co-pending *Daubert* motion. Like Carpenter, Defendants use Bishop as a conduit to present hearsay to the jury.

"Generally speaking, an expert is not permitted to testify as to hearsay information acquired during said expert's investigation that forms the basis for the [expert's] opinions and conclusions. … It is inappropriate for an expert to simply transmit rank hearsay information to the jury without forming an opinion based on his extensive experience and a reliable methodology." *Sells v. Thaler*, No. CIV. SA-08-CA-465-OG, 2012 WL 2562666, at *63 (W.D. Tex. June 28, 2012) (citing *United States v. Mejia*, 545 F.3d 179, 194-97 (2nd Cir. 2008)). "An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, Fed. R. Evid. 703, but not as general proof of the truth of the underlying matter, Fed. R. Evid. 802." *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1982). Here, Defendants seek to use Carpenter and Bishop to "transmit rank hearsay information to the jury" in violation of *Sells*, *Mejia*, and *Fox*. They do not use their experience to form an opinion about the evidence. They simply take third party information from the internet or other sources at face value, and intend to tell the jury about it verbatim. Defendants should be excluded from presenting this evidence.

### III.    MIL #3: NO REFERENCE TO "DISCRIMINATION" AND "FAVORABLE TREATMENT" OF KOREAN ENTITIES

Pursuant to FED. R. EVID. 403, Wireless Alliance seeks to prevent Defendants from referring to "discrimination" or "discriminatory actions" or "discriminatory licensing." Defendants' damages experts, Inglish and Carpenter, extensively refer to the terms "discriminatory" and "discrimination" in their opinions. Defendants use this term because it invokes loaded concepts such as racial and/or national origin discrimination. And this is intentional. Wireless Alliance expects Defendants to argue extensively that Wireless Alliance's predecessors-in-interest favored other Korean companies. Indeed, their entire FRAND defense is built on this argument. *E.g*, Dkt. 116-2 at ¶ 9 (Inglish ████████████████████████████████████████████████████████████████

3



██████ ), 48, 68, 95; Dkt. 134 ████████████████████████

*see also* Dkt. 114-2 at ¶ 169 ████████████████████████████

████████ ), 44-59 ( ████████████████████████████████

████████ ); Dkt. 114-3 at ¶¶ 69-77 ( ████████████████████

████████████████████████████████████████████████████

████████████████ ). Other than the arguments of Defendants and their experts, there is no evidence in the record that Wireless Alliance or any of its predecessors-in-interest ever made decisions solely to favor Korean companies. Defendants should not be permitted to argue to the jury that they have.

"Discrimination," as Defendants refer to it, is not a consideration in a correct FRAND analysis. Rather, the non-discrimination prong of FRAND is properly read "as working together with the fair and reasonable limb of FRAND as part of a unitary concept. The role of the non-discrimination limb is to ensure that the fair and reasonable royalty is one which does not depend on any idiosyncratic characteristic of the licensee." *Unwired Planet International Ltd, v. Huawei Technologies Co.*, 2020 UKSC 37 at ¶¶ 123-124 (Aug. 26, 2020) (*Unwired Planet* III, Dkt. 114-5). In fact, "discrimination" standing alone (that is, non-uniform treatment of licensees) is permitted in FRAND licensing. *E.g.*, *In the Matter of Certain Wireless Devices With 3G Capabilities And Components Thereof*, ITC Inv. No. 337-TA-800, Initial Determination at 432 (June 28, 2013) (Dkt. 114-7) (the non-discrimination aspect of FRAND "does not require uniform treatment across licensees, nor does it require the same terms for every manufacturer or component"); *Unwired Planet III* at ¶¶ 123-124 (Aug. 26, 2020) ("Since price discrimination is the norm as a matter of licensing practice and may promote objectives which the ETSI regime is intended to promote…"). The non-discrimination prong is just one aspect of a FRAND analysis.

Indeed, the non-discrimination prong of a FRAND analysis has been analogized by at least one court to the fourth *Georgia-Pacific* factor ("The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly"). *ESS Tech., Inc. v. PC-Tel, Inc.*, No. C-01-1300 VRW, 2001 WL 1891713, at *5 (N.D. Cal. Nov. 28, 2001). None of this has any anything to do with "discrimination."

Defendants engage in a simplistic analysis. According to Defendants, "D" in FRAND refers to "discrimination," and a license influenced by the Korean citizenship of the parties is "discrimination" and a violation of FRAND. Defendants have cited to **no precedent** supporting their simplistic argument. *See* Dkt. 134 at 6-7 (criticizing Wireless Alliance's citation to *Unwired Plant III* but offering no legal support for their argument). This is because there is none.

Because there is no such thing as "discrimination" in a FRAND analysis as Defendants intend to use the term, and because it is highly prejudicial to Wireless Alliance for Defendants to refer to "discrimination" and similar terms in front of the jury, the Court should prevent Defendants and their witnesses from using it. If Defendants defeat Wireless Alliance's summary judgment motion regrading Defendants' FRAND defense, they should be able to make their arguments using non-prejudicial terms such as "FRAND terms and conditions" or the "non-discrimination prong of FRAND" without prejudicially referring to "discrimination." Similarly, Defendants should be excluded from arguing that Wireless Alliance or its predecessors-in-interest acted solely to favor other Korean companies because such an argument is counterfactual and highly prejudicial.

## IV.    MIL #4: NO REFERNCE TO NON-COMPARABLE LICENSES

In reasonable royalty damages cases like these, the Federal Circuit requires that agreements considered for damages must be comparable to the hypothetical negotiation at issue. *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022), citing *Lucent Techs., Inc. v. Gateway,*

5

*Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009) ("The party proffering a license bears the burden of establishing it is sufficiently comparable to support a proposed damages award."); *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) ("comparisons of past patent licenses to the infringement must account for 'the technological and economic differences' between [the past patent licenses and the patent in suit]") (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010)); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010).

There have been over ▮ license agreements produced by the parties in these cases. There are distinct subsets of agreements that neither expert has opined are comparable to the hypothetical negotiation for damages. WA's damages expert, Bergman, finds that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are comparable licenses for damages. *See* Dkt. 106, Ex. A at ¶281 (▮▮▮▮), ¶283 (▮▮▮▮▮▮▮▮▮); Dkt. 139, Ex. 2 at ¶291 (▮▮▮▮▮▮▮▮); Dkt. 139, Ex. 3 at ¶271 (▮▮▮▮▮▮). The only agreements Defendants' rebuttal damages expert, Inglish, concludes are comparable for damages are ▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 116, Ex. A at Schedule 1 (▮▮▮▮▮▮), ¶¶98-99 (▮▮▮▮▮▮▮). Therefore, none of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are supported by any comparability opinion by either sides' experts.[3]

---

[2] To be clear, this MIL does not address agreements of Intervenors Ericsson or Nokia that at least one expert (*e.g.*, Bergman or Inglish) has opined are comparable.

[3] WA is moving to exclude Inglish's opinions on two ID licenses, one with ▮▮▮▮▮▮. Dkt. 116. As WA explains in that briefing, these agreements are indisputably not arms-length and not comparable for damages. *Id.*; concurrently-filed Reply in Support of Dkt.

Under the Federal Circuit principles of license comparability and FED. R. EVID. 403, Defendants should be precluded from offering evidence or testimony on these agreements, which neither Defendants' nor WA's damages experts established are comparable for damages. Placing these noncomparable agreements in front of the jury, including their payment terms, would prejudice WA and confuse the jury. Moreover, it would invite reversible error in the jury's verdict if the jury adopted a payment term or otherwise relied upon a noncomparable agreement. *Lucent Techs.*, 580 F.3d at 1329 ("…a [] damages award cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers…").

## V.   MIL #5: EXCLUDE REFERENCES TO POST-ISSUANCE PATENT OFFICE PROCEEDINGS

Court routinely exclude reference to post-issuance proceedings, including IPRs. *E.g.*, (*https://txed.uscourts.gov/sites/default/files/judgeFiles/8.11.23%20Patent%20Standing%20Limine%20Order.pdf*) ("Judge Gilstrap Court MILs") at MIL No. 6 ("The parties shall be precluded from introducing evidence, testimony, or argument concerning the Patent Trial and Appeal Board, inter partes review, the Smith-Leahy America Invents Act, or any alternative structure that does not relate directly to an Article III trial in a district court."); *Vaporstream, Inc. v. Snap Inc.*, No. 217CV00220MLHKSX, 2020 WL 978731, at *7-*8 (C.D. Cal. Feb. 28, 2020) (even if minimally relevant "the Court still excludes the evidence due the danger of jury confusion and wasting of time and resources. [Explaining the differences between the PTAB and the Court] would likely consume a significant amount of time and potentially lead to jury confusion over the invalidity issues in the case."). Here, there are three pending IPRs filed in late February 2024. Wireless Alliance does not expect institution decisions until shortly before trial (late September).

116. Should that motion addressing those two agreements be denied, WA agrees those two agreements are not subject to this MIL.

7

Defendants oppose this MIL because, if one or more of the IPRs is instituted, they argue it will be relevant to rebutting Wireless Alliance's willfulness allegations. Defendants are wrong. Defendants were put on notice of their infringement in January 2021. An interim notice of institution from the Patent Office ***three-and-half years*** after notice is hardly relevant to Defendants' willfulness.[4] *E.g.*, *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2022 WL 2800911, at *2 (D. Del. June 27, 2022) ("I find that the introduction of evidence regarding the IPRs will result in prejudice to IOENGINE that substantially outweighs any minimal probative value [to willfulness] that the evidence may have."). Moreover, as this Court is familiar with, an Institution Decision is an interim order made under a far lesser standard than invalidity in Court (the "reasonable likelihood of success" standard). Allowing Defendants to make arguments based on a not-yet-even-issued Institution Decision will require extensive and wasteful responsive argument and jury instructions about PTAB procedure, the meaning of an Institution Decision, and the varying standards of proof used by the PTAB and the Court. *See, e.g.*, *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 4560071, at *14 (N.D. Cal. Aug. 22, 2016). Jury confusion is also likely because there is significant overlap between Defendants' IPR arguments and its invalidity arguments. Indeed, Wicker even copies-and-pastes a number of his figures directly from Defendants' IPR petitions. Defendants could wrongly think the Patent Office has endorsed or otherwise agreed with Defendants' arguments.

## VI.    MIL #6: EXCLUDE REFERENCE TO PRIVILEGED COMMUNICATIONS AND INTERVENORS' ACTIONS TO REBUT WILLFULNESS ALLEGATIONS

Defendants should be excluded from referring to, relying, or even mentioning privileged communications, including communications between Defendants and Intervenors about Intervenors' relevant beliefs, to rebut Wireless Alliance's willfulness allegations. Defendants did

---

[4] A Final Written Decision likely would not be entered until almost a year after trial.

8

not disclose any reliance on advice of counsel defense during discovery. During discovery, Defendants' representatives testified that ███████████████████████████ ██████████████████████████████████████████. *E.g.*, Ex. 1 at 31:19-36:23 (AT&T designated its entire response to Wireless Alliance's correspondence privileged); Ex. 2 at 44:10-46:6 (claiming privilege); Ex. 3 at 22:17-24, 28:22-29:20 (███████████ ███████████). Defendants should be prevented from providing testimony at trial that they asserted was privileged during discovery.

Despite preventing discovery of relevant facts during discovery on the basis of privilege, during the meet and confer regarding MILs, Defendants indicated that they intended to adduce testimony about Defendants' reliance on Intervenors' beliefs about liability, including ███████ ██████████████████████████████████████████. This should not be permitted because Defendants' interactions with Intervenors about Wireless Alliance's allegations were deemed privileged. For example, AT&T testified that ████████████████████████ ███████████████████████████. Ex. 1 at 54:5-12. ██████████████████████████ ███████████████████, AT&T claimed privilege over any and all further information, ████████ ██████████████████████████████████████████████ ██████████████████████. *E.g.*, Ex. 1 at 43:7-45:15, 56:4-25, 61:20-62:19; *see also id.* at 47:16-52:16 (████████████████████████████████████████████████ ███████). AT&T's position is a classic sword and shield use of privilege, allowing for AT&T to rely on knowledge it deems helpful but using privilege to prevent any discovery that undermines AT&T's argument. The other Defendants did not even allow the level of discovery permitted by AT&T and deemed all communications █████████████ privileged. *E.g.*, Ex. 3 at 30:6-31:18 (██████ ██████████████████████████████████████████████

9



); Ex. 2 at 49:23-25

( ). If they received the ████████ , they did not produce it and any testimony about it was deemed privileged. Defendants' untimely use of an "advice of someone else's counsel" is inappropriate and should be excluded.

Defendants also argue that Wireless Alliance's position conflicts with its position regarding a potential MIL Defendants could file seeking to exclude the testimony of any fact Mr. Bernstein learned from counsel. There is no conflict. Here, the issue is that Defendants intend to have their witnesses testify about topics that they deemed privileged or would not let Wireless Alliance fully explore during discovery due to privilege. Defendants' potential MIL, on the other hand, is an overbroad and vague MIL inconsistent with relevant precedent. Unlike Defendants' argument, Wireless Alliance has no intention adducing testimony from Mr. Bernstein about topics deemed privilege during discovery. Nor does it intend to adduce testimony from Mr. Bernstein about legal advice Wireless Alliance received from its counsel. As Defendants described their potential MIL during the meet and confer, it seeks to prevent Mr. Bernstein from testifying about *any* information learned from an attorney. For example, any testimony about ████████ ████████ would be excluded because the information was learned from counsel. A non-privileged description of a meeting Mr. Bernstein did not personally attend would similarly be excluded at trial simply because his factual information is based on a conversation with counsel. Just as Wireless Alliance could not deem factual information "privileged" simply because it came from an attorney, Mr. Bernstein should be able to testify about factual information at trial even if it was learned from counsel. And Defendants indicated they intend to go even further. According to Defendants, if Mr. Bernstein were to testify about any information he learned from counsel,

10

they would immediately seek a deposition of counsel *and* seek disqualification of that attorney. Defendants' argument, should it actually be raised in a MIL or later, makes no sense.

Accordingly, under FED. R. EVID. 402 and 403, Defendants should be precluded from relying on privileged communications, including any communications with Intervenors, to rebut Wireless Alliance's willfulness allegations.

## VII.    MIL #7: EXCLUDE ARGUMENTS ABOUT FRAND BREACH OF CONTRACT OR ANY VIOLATION OF A FRAND ENCUMBRANCE

Defendants should be excluded from referring to any breach of FRAND argument to the jury because they have no such defense.[5] As discussed in the co-pending motion for summary judgment of no essentiality, Defendants have *not* pled a breach of contract defense here. Defendants have, however, made it clear that this is exactly the argument that they intend to raise to the jury. They should not be permitted to do so.

In none of Defendants' or Intervenors' answers or counterclaims is any breach of contract defense asserted. Indeed, there is no reference to "breach" in any of their responsive pleadings. And while Defendants did assert a Thirteenth Defense ("Contractual Limitation on Damages – FRAND"), that defense is not a breach of contract defense. Defendants have not explained what this defense is other than in terms of their unpled and untimely breach of contract arguments. Rather, until the end of discovery, Defendants' Thirteenth Defense appears to have been based on the adjusted *Georgia Pacific* factors in *CSIRO v. Cisco Systems, Inc.*, 809 F.3d 1295, 1304 (Fed. Cir. 2015). *See* Dkt. 140 at 10-11. *CSIRO*, however, does not discuss a FRAND breach of contract claim. Rather, it stands for the proposition that, if a patent is shown to be essential to a standard, damages must account for "any value flowing to the patent from the standard's adoption." *Id.*

---

[5] This issue came to a head because Defendants refused to agree to Judge Gilstrap's Court MIL excluding arguments on equitable issues or defenses to the jury. Defendants would only agree if Wireless Alliance not to use the MIL to exclude any purported FRAND defense.

Moreover, allowing a breach of contract argument to be raised here is highly prejudicial to Wireless Alliance. Defendants do not engage in a breach of contract analysis. And, as discussed above and other co-pending briefing, Defendants' FRAND-related arguments are exclusively about purported "discrimination." Defendants present no evidence or argument demonstrating the "fair" and "reasonable" prongs of a FRAND analysis at all. According to Defendants, no experts opine about a FRAND rate at all, and their FRAND expert (Carpenter) is offered to provide ███ ████████████████████████████████████████ Dkt. 134 at 7.

Defendants also have not sought the necessary pre-trial proceedings to determine a FRAND rate for the Asserted Patents such that the jury could even make a determination about whether Wireless Alliance breached an unplead contractual obligation. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1037-39 (9th Cir. 2015) (approving of district court holding a pre-trial "RAND bench trial" to set FRAND rate to be used by jury in determining the breach of contract claim); *In re Innovatio IP Ventures, LLC Pat. Litig.*, No. 11 C 9308, 2013 WL 5593609, at *2 (N.D. Ill. Oct. 3, 2013) (deciding both essentiality and FRAND rate via bench trials prior to jury trial). Doing so now would be highly prejudicial to Wireless Alliance because trial is fast approaching.

## VIII.   MIL #8: JUDGE GILSTRAP'S OTHER COURT MILS SHOULD BE ADOPTED

Though the parties have agreed to adopt the majority of Judge Gilstrap's Court MILs, Defendants have declined to adopt a few of them. Judge Gilstrap's Court MIL Nos. 6 (about post-issuance Patent Office proceedings) and 12 (about party ownership) are addressed above. The Court should adopt the remainder of Judge Gilstrap Court MILs as well.

Judge Gilstrap's Court MIL No. 12 is "The parties shall be precluded from introducing evidence, testimony, or argument regarding funding of the litigation or regarding any comment on attorney-fee compensation including amounts or structure." By declining to agree to this MIL,

12

Defendants' reserve the right to argue about litigation funding or how Wireless Alliance's counsel is being compensated to the jury. These arguments have no relevance to the actual issues in this case, and are clearly designed to paint Wireless Alliance and its counsel in a negative light (an argument that would be in violation of Agreed MIL No. 10, filed concurrently, in any event). Even if Defendants can identify some minimal relevance of these arguments, they are highly prejudicial and should be excluded under FED. R. EVID. 403.

Judge Gilstrap's Court MIL No. 18 is "The parties shall be precluded from introducing evidence, testimony, or argument for purposes of infringement or non-infringement comparing the accused product or method to the preferred embodiments, the specification, or any non-accused product or method." Wireless Alliance seeks this MIL because such arguments are irrelevant. The purpose of claim construction is to use the intrinsic evidence to define the meaning of the claims. The infringement analysis compares the claims, as construed by the Court, to the Accused Products. Whether the Accused Products are the same or different than the intrinsic evidence (or non-accused products) is irrelevant to whether the claims are infringed. Defendants likely oppose this MIL because some of their non-infringement arguments are collateral attacks on the Court's claim construction (in violation of Agreed MIL No. 15 (filed concurrently)). But Defendants' arguments relying on analysis of the intrinsic evidence should not be made to the jury. Defendants had an opportunity to argue claim construction to the Court during discovery. As Judge Gilstrap now recognizes in all of his cases, Defendants should not be permitted to make claim construction-style non-infringement arguments based on the intrinsic evidence to the jury. The Court should similarly exclude such arguments.

Judge Gilstrap's Court MIL No. 19 is "The parties shall be precluded from introducing evidence, testimony, or argument suggesting that a verdict in one party's favor would impact the

13

cost of goods or services or would have other commercial impacts." This argument is particularly prejudicial here because the Accused Products (Defendants' cellular services) are likely used by every juror. Every juror will have a cell phone, and they all will use Defendants' cellular network either directly or indirectly. The main purpose of Defendants bringing this argument is to scare the jury into artificially depressing their damages verdict to prevent the cost of their own cellular service being raised. Such considerations are not relevant to the hypothetical negotiation, and Defendants should not be able to stoke such irrelevant fears. Moreover, if Defendants make such an argument, Wireless Alliance will likely need to discuss otherwise irrelevant topics, such as top-line yearly revenue numbers and the multitude of fees that Defendants need not pass on to customers but do so to increase their profits, such as regulatory charges, administrative charts, and gross receipts surcharges. These arguments are irrelevant, a waste of time, and should be excluded.

Dated: August 30, 2024                    Respectfully submitted,

                                          /s/ Benjamin T. Wang
                                          Benjamin T. Wang

                                          Benjamin T. Wang
                                          CA State Bar No. 228712
                                          Email: bwang@raklaw.com
                                          Andrew D. Weiss
                                          CA State Bar No. 232974
                                          Email: aweiss@raklaw.com
                                          Qi Tong
                                          CA State Bar No. 300347
                                          Email: ptong@raklaw.com
                                          Jacob R. Buczko
                                          CA State Bar No. 269408
                                          Email: jbuczko@raklaw.com
                                          Dale Chang
                                          CA State Bar No. 248657
                                          Email: dchang@raklaw.com

14

**RUSS AUGUST & KABAT**
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Greg Love
Texas State Bar No. 24013060
Email: greg@swclaw.com
STECKLER WAYNE LOVE
107 East Main Street
Henderson, Texas 75652
(903) 212-4444 (telephone)

Attorneys for Plaintiff
*Wireless Alliance, LLC*

15

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Plaintiff hereby files its Certificate of Authorization to file its Motions *In Limine* per Local Rule CV-5(a)(7)(A)-(B). The undersigned counsel for Plaintiff hereby certifies that the Court has already granted authorization to seal the document as set forth in the Protective Order.

*/s/ Benjamin T. Wang*
Benjamin T. Wang

**CERTIFICATE OF CONFERENCE**

I hereby certify that Plaintiffs have complied with the meet and confer requirements set forth in Local Rule CV-7(h). Counsel for Plaintiff met and conferred with counsel for Defendants on August 28, 2024. No agreement was reached regarding the relief sought in this motion.

*/s/ Benjamin T. Wang*
Benjamin T. Wang

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document is being served through email on August 30, 2024.

*/s/ Benjamin T. Wang*
Benjamin T. Wang

16