IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| WIRELESS ALLIANCE, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00095-RWS-RSP |
| | § | (LEAD CASE) |
| AT&T MOBILITY LLC, ET AL., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER

Before the Court is the Motion to Strike the Testimony of Plaintiff Wireless Alliance LLC's damages expert Jim W. Bergman filed by Defendants AT&T Mobility LLC, AT&T Services, Inc., AT&T Corp., T-Mobile USA, Inc., and Cellco Partnership d/b/a/ Verizon Wireless. Dkt. No. 106. For the reasons discussed below, the Court **DENIES** the Motion.

### I.  LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular

expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II. ANALYSIS

### A. SWITCHING ROYALTY BASES

Defendants first contend that Mr. Bergman improperly switches royalty bases by deriving a

per-patent family device rate for Ericsson's portfolio then applying the device rate he derived to the service revenues of the carriers. Dkt. No. 106 at 7. Defendants argue that this methodology runs afoul of Federal Circuit precedent because the royalty depends on whether the defendant is the manufacturer or the end user of the device. *Id.* at 8 (quoting *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983)). The Carriers assert that no carrier would ever pay a royalty based on Ericsson's cellphone or infrastructure rates based on the carrier subscriber revenue. Neither *Stickle* nor any of the other cases cited by Defendants provide them with the basis to strike Mr. Bergman's report under Rule 702 and *Daubert*. The Court thus rejects Defendants' attempt to sidestep the analysis under 35 U.S.C. § 284 and *Georgia-Pacific* factor 11. Plaintiff persuasively rebuts Defendants' critique. The Court finds that the Defendants' concerns identify disputes regarding credibility not reliability.

## B.  ENTIRE MARKET VALUE RULE & APPORTIONMENT

Defendants next move to strike Bergman's report because they allege that he uses the entirety of the Defendants' subscriber revenue. Dkt. No. 106 at 9. Defendants raise concerns about Plaintiff's purported intention "to bandy large carrier revenue numbers before the jury in the hope[] the requested damages will seem more reasonable." *Id.* at 10. The Parties have agreed to a motion in limine preventing that concern. Dkt. No. 155 at 1 (Agreed MIL No. 3). Defendants next argue that Bergman uses the Entire Market Value Rule (EMVR) without the proper support. *Id.* at 11. Plaintiff responds that Bergman "conducted multiple patent- and Defendant-specific analyses supported by Cooklev's technical opinions to calculate apportionment factors for the incremental value provided by the infringing features over non-infringing features." Dkt. No. 139 at 12. And based on that, apportioned the revenue from the allegedly infringing features and thus did not implicate the EMVR. *Id.*  The Court is satisfied that Mr. Bergman's approach does not invoke the Entire Market Value Rule.  What remains is a fact issue.

3

## C.  UNRELIABLE PATENT RATES

Defendants next argue that Bergman makes two methodological errors. "First, he improperly applies essentiality studies of declared patents to charted patent families. Second, Bergman without sufficient basis, relies on Schankerman's claim that the top 10% of patents in a portfolio drive 84% of the value." Dkt. 106 at 14. Finally, Defendants point to inconsistent statements from Plaintiff's other expert. *Id.* at 15. Plaintiff disputes Defendants' characterization of Bergman's reliance on Schankerman. WA contends instead that he merely used Schankerman as a last step to distinguish apportionment rates between high value and lower value patents. Dkt. No. 139 at 15. Defendants are free to cross-examine Mr. Bergman with potentially inconsistent statements from Plaintiff's other expert, but there is no basis to strike that testimony.

Accordingly, the Motion to Strike (**Dkt. No. 106**) is **DENIED**.

**SIGNED this 23rd day of October, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

4