IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WIRELESS ALLIANCE, LLC, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | § CIVIL ACTION NO. 2:23-CV-00095-RWS-RSP |
| | § (LEAD CASE) |
| AT&T MOBILITY LLC, ET AL., | § |
| | § |
| *Defendants*. | § |

## MEMORANDUM ORDER

Before the Court is the Motion to Strike the Testimony of Defendants' expert Blake Inglish filed by Plaintiff Wireless Alliance, LLC. Dkt. No. 116. For the reasons discussed below, the Court **GRANTS** the Motion only **IN PART**.

### I.  LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various

factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II. ANALYSIS

### A. FRAND OPINIONS

First, Plaintiff objects to Inglish's FRAND opinions because they rely on the unsupported assumption that the patents are encumbered by a FRAND obligation. Dkt. No. 116 at 6–8. The

Court has recommended granting summary judgment that the '383 Patent is not FRAND encumbered, and denying summary judgment about FRAND for the other two patents in suit. *See* Dkt. No. 235. The Court has also addressed Plaintiff's concurrently filed Motion to Strike Carpenter's opinions. Dkt. No. 252. Consistent with that Order, the portion of Mr. Inglish's report that discussed FRAND obligations for the '383 Patent is hereby **STRICKEN.** It is not improper for the damages expert to assume FRAND coverage and leave it to Defendants to carry their burden to prove that fact through other witnesses and evidence. This part of the motion is denied as to the '106 and '662 Patents.

### B.  THE ID-SAMSUNG AGREEMENT

Next, Plaintiff objects to Inglish's opinions regarding the 2020 ID-Samsung license. Dkt. No. 116 at 8. Specifically, Plaintiff claims that Inglish has not established that the license "is technically or economically comparable to the hypothetical negotiation for damages in this case." *Id.* (citing *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010)). Plaintiff argues that the ID-Samsung agreement was not the product of an arm's length negotiation because of a preexisting investment relationship between Samsung and ID, thus the agreement is not economically comparable and Inglish cannot rely on it for that purpose. *Id.* at 9. Defendants concede that the license may not be arm's length and that this part of Mr. Inglish's report relied on the permissible, stated, assumption that the patents are FRAND encumbered. Dkt. No. 133 at 3. Next, Defendants argue that a license to the Asserted Patents is indisputably technically comparable for the purposes of the hypothetical negotiation. *Id.* Additionally, Defendants reference Mr. Inglish's opinions regarding why the ID-Samsung agreement could be considered arms-length from his deposition. *Id.* at 4. Finally, Defendants argue that Mr. Inglish accounted for any relevant economic differences in his report. *Id.* (citing 116-2 ¶ 42).

The Court agrees with Defendants that the technical comparability of licenses to the same

3

patent is self-evident. Plaintiff's reliance on *Warsaw Orthopedic* and *Allen Archery* to argue that Inglish's opinions about the Samsung-ID license should be excluded because it wasn't negotiated at arms-length are unpersuasive. *See Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1378 (Fed. Cir. 2015) *cert. granted, judgment vacated on other grounds sub nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 577 U.S. 1099 (2016), and *opinion reinstated in part,* 824 F.3d 1344 (Fed. Cir. 2016); *Allen Archery, Inc. v. Browning Mfg. Co.*, 898 F.2d 787, 790 (Fed.Cir.1990). Both cited cases arise in the context of related companies that had separate legal existences but were deeply operationally interdependent. *Id.* Plaintiff does not allege that sort of relationship between Samsung and ID. The economic comparability is what the relevant experts are exploring. Plaintiff may vigorously cross-examine Mr. Inglish about any deficiencies in his analysis. The Court is not persuaded by these objections.

### C. ETRI-ID AGREEMENT

Plaintiff also objects to Inglish's opinions regarding the 2011 Exclusive License Agreement between ETRI and ID which included the '106 and '662 Patents, but not the '383 Patent. Dkt. No. 116 at 10. Plaintiff asserts that Inglish's opinion lacks reliable economic analysis that relates the agreement to the hypothetical negotiation. *Id.* First Plaintiff argues that the agreement was between two Korean Government associated entities and thus is not arm's length. *Id.* at 11. Plaintiff also argues that Inglish does not consider that the ETRI patents did not exist at the time of the agreement, in fact the application for the '662 Patent had not been filed yet, and that market and technical landscape had changed between the entry of the agreement and the issuance of the patents. Defendants respond that Mr. Inglish "never opined that the ETRI-ID agreement is a comparable license for determining damages in this case," and did not use it for his *Georga-Pacific* analysis. Dkt. No. 133 at 5. Instead, they argue that Inglish only seeks to discuss the history of the patents in suit. *Id.* Having reviewed the relevant paragraphs of Mr. Inglish's report, the Court finds

4

that Paragraph 38 is permissible as a recitation of the licensing history of the patents in suit. Paragraph 39 is an impermissibly speculative comparability and valuation opinion without the requisite foundation and accordingly is **STRICKEN.**

### D. INGLISH'S RELIANCE ON DELGADO

Next, Plaintiff objects to Inglish's reliance on Patricio Delgado, an employee of intervenor Ericsson, because Delgado was not disclosed to Plaintiff under FRCP 26. Dkt. No. 116 at 12. Defendants respond that the statements from Mr. Delgado that Mr. Inglish relied on are not expert opinions, but rather factual statements which are allowed under FRCP 703. Dkt. No. 133 at 6. It is difficult for the Court to determine the importance of this testimony (an estimation of the percentage of patent families for which claim charts could be developed for infrastructure equipment, that any patent that Ericsson charted for essentiality purposes is actually essential, and about the knowledge and motivations of generic licensors). However, the Court does conclude that these are opinions and that they were not timely disclosed. Accordingly, any testimony relying upon opinions of Mr. Delgado is hereby **STRICKEN**. Since Mr. Delgado was himself disclosed as a person with knowledge, and even deposed, Mr. Inglish may rely upon *facts* derived from him.

### E. "SETTLEMENT" COMMUNICAITONS

Finally, Plaintiff objects to Inglish's reliance on pre-suit negotiations under FRE 408. Dkt. No. 116 at 14. The Court addressed the FRE 408 issue at the Pre-Trial Conference and ruled that because no litigation or claim was pending at the time of the June 21, 2021 letter proposing a license, Rule 408 was not implicated, as the letter was a mere licensing negotiation letter. *See* Dkt. No. 227 at 143-144. On the other hand, Plaintiff's motion represents that some of the pre-suit correspondence relied upon by Inglish is marked "for settlement discussion purposes only" and "Subject to FRE 408." Dkt. No. 116 at 14-15. Such correspondence would appear to fall within the proscription of Rule 408 against proving the amount "of a disputed claim," by "offering to accept a

valuable consideration in compromising or attempting to compromise the claim." Since Wireless clearly knew how to mark correspondence it contended was subject to Rule 408, this motion is **GRANTED** to the extent that Defendants may not elicit from Inglish any testimony about any correspondence marked with notice of the sort just addressed, unless counsel first approaches the bench and obtains leave by showing that the marking was unsupported. On the other hand, if the pre-suit correspondence is not so marked, Defendants may use it unless Plaintiff lodges a successful contemporaneous objection.

### III.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** the motion only as set forth above.

**SIGNED this 30th day of October, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE